**Melvin E. ISAAC, Appellant (Defendant Below),**

v.

**STATE of Indiana, Appellee (Plaintiff Below).**

**No. 2–1181A373A.**

Court of Appeals of Indiana, Second District.

Sept. 22, 1982.

passengers a duty of reasonable care. *Munson v. Rupker*, (1925) 96 Ind.App. 15, 148 N.E. 169.

Theodore D. Wilson, Wilson, Coleman & Roberts, Indianapolis, for appellant.

Linley E. Pearson, Atty. Gen., Stephan E. Wolter, Deputy Atty. Gen., Indianapolis, for appellee.

BUCHANAN, Chief Judge.

### CASE SUMMARY

Defendant-appellant Melvin E. Isaac (Isaac) appeals his convictions of two counts of exhibiting an obscene performance[1] and two counts of exhibiting obscene matter,[2] asserting that his convictions and sentences for four offenses were improper because he committed only two illegal acts.

We affirm in part and reverse in part.

### FACTS

The evidence most favorable to the State discloses that two minor boys, J. S. and J. M., visited Isaac's Indianapolis home on September 2, 1979. The boys had been hired to mow Isaac's lawn. At one point, Isaac invited J. S. into his house. Isaac took the boy to an office-like room and began showing him an "X-rated" film.[3]

Isaac experienced difficulty in operating the film projector, and while he attempted to adjust the focus, J. S. went outside and asked J. M. to come into the house with him. When the boys entered the room occupied by Isaac, he showed them numerous

---

1. Ind.Code 35–30–10.1–3.

2. Ind.Code 35–30–10.1–2(2).

3. Isaac does not challenge the trial court's conclusion that the film and the pictures shown to the children fell within the definition of obscenity set out in IC 35–30–10.1–1.

obscene photographs and a pornographic magazine. He then continued to run the pornographic movie while both boys watched.

A trial to the court resulted in Isaac's conviction for four obscenity offenses:[4] He was found guilty on two counts of exhibiting an obscene performance[5] and two counts of exhibiting obscene matter.[6] Isaac's one-year sentences on each count were to be served concurrently, and the sentences were suspended.

### ISSUES

Two issues were preserved for our determination:[7]

1. Was Isaac improperly convicted of two counts of exhibiting an obscene performance under Ind.Code 35–30–10.1–3?

2. Was Isaac improperly convicted of two counts of exhibiting obscene matter under Ind.Code 35–30–10.1–2(2) when the evidence was undisputed that he showed the materials to two people at the same time?

### DECISION

ISSUE ONE—Was Isaac improperly convicted of two counts of exhibiting an obscene performance under IC 35–30–10.1–3?

PARTIES' CONTENTIONS—Isaac's position is that in showing the film to the two minors, he committed only one illegal act and that his convictions of two counts of exhibiting an obscene performance violate the double jeopardy clause's prohibition of multiple punishments for a single offense. Although the State concedes that a single exhibition of an obscene film to more than one person at the same time is only one offense, it argues that the evidence shows there were in fact two exhibitions of the pornographic film.

CONCLUSION—Isaac exhibited two separate obscene performances within the meaning of the statute; therefore, two convictions were proper.

Under IC 35–30–10.1–3 [hereinafter referred to as the obscene performance statute], the State was required to show that Isaac knowingly or intentionally exhibited an obscene performance. "Performance" is defined as "any play, motion picture, dance, or other exhibition or presentation, whether pictured, animated, or alive, *performed before an audience of one (1) or more persons.*" IC 35–30–10.1–1(b) (emphasis supplied). Although the statute has not been interpreted by Indiana courts, the State concedes, and we understand the plain meaning of this definition to be, that a single exhibition to more than one person is only one offense under the obscene performance statute. However, we are persuaded by the State's argument that two separate exhibitions took place.

4. Isaac was also found guilty of battery, but does not appeal that judgment.

5. "A person who *knowingly or intentionally* engages or participates in, manages, produces, sponsors, presents, *exhibits,* photographs, films, or videotapes any *obscene performance* commits a Class A misdemeanor. However, the offense is a Class D felony if the obscene performance depicts or describes sexual conduct involving any person who is or appears to be under sixteen (16) years of age." I.C. 35–30–10.1–3 (emphasis supplied).

6. "A person who *knowingly or intentionally:* (1) sends or brings into Indiana obscene matter for sale or distribution; or (2) offers to distribute, distributes, or *exhibits to another person obscene matter;* commits a Class A misdemeanor. However, the offense is a Class D felony if the obscene matter depicts or describes sexual conduct involving any person who is or appears to be under sixteen (16) years of age." I.C. 35–30–10.1–2 (emphasis supplied).

7. Other issues raised by Isaac are waived. His arguments that the obscenity statutes make private possession of obscene materials a crime and that his pornographic materials were improperly seized are waived for failure to include them in his motion to correct error and for failure to make a cogent argument. Ind. Rules of Procedure, Trial Rule 59(D); *Trapp v. State,* (1980) Ind.App., 406 N.E.2d 296. Isaac's argument that the statutes were aimed at a commercial setting and were thus improperly applied to an exhibition in his home is also waived for failure to set out the alleged error in his motion to correct error. Furthermore, we observe that this last argument was explicitly rejected in *Beach v. State,* (1980) Ind.App., 411 N.E.2d 363, *trans. denied.*

■ Because this is a sufficiency of the evidence question, we will not reweigh the evidence or judge the credibility of witnesses. Considering only that evidence most favorable to the State and all reasonable inferences to be drawn therefrom, a conviction will not be set aside if there is substantial evidence of probative value supporting the conclusion of the trier of fact. *Gatewood v. State*, (1982) Ind., 430 N.E.2d 781; *Moon v. State*, (1981) Ind., 419 N.E.2d 740.

■ After Isaac began showing the film to J. S., the boy left the house and returned with J. M. Isaac then showed both boys the photographs and an obscene magazine *before* showing them the pornographic film. This evidence supports the trial judge's conclusion that two separate exhibitions took place. Thus, Isaac was properly convicted of two counts of exhibiting an obscene performance.

ISSUE TWO—Was Isaac improperly convicted of two counts of exhibiting obscene materials under IC 35–30–10.1–2(2) when the evidence was undisputed that he showed the materials to two people at the same time?

PARTIES' CONTENTIONS—Isaac again complains that he was the victim of prosecutorial "overcharging"; that is, that in exhibiting the obscene photographs to the two minors, he committed only one violation of IC 35–30–10.1–2(2). The State counters with an argument that a crime is committed each time obscene material is exhibited to another person, even though the material may be exhibited to more than one person at the same time.

CONCLUSION—Because Isaac's act of exhibiting obscene materials constituted but one offense, one of the convictions must be reversed.

■ In determining whether Isaac's convictions violate the double jeopardy principle that a defendant may not be twice punished for the same offense in a single proceeding, we turn to the leading Indiana case, *Elmore v. State*, (1978) Ind., 382 N.E.2d 893. There, Justice Pivarnik cautioned against focusing upon whether the same act gave rise to the offenses:

"The focus of a proper double jeopardy analysis must be on whether or not the offenses to be prosecuted and punished are the same, and not whether the offenses spring from the same act or operative circumstances. The inquiry into whether the offenses stem from the same act is merely the first step in the analysis. . . . [W]here they do arise from the same act, we must proceed to determine whether the offenses charged are themselves the same, for the Double Jeopardy Clause was written in terms of the 'same offense,' not the same act. In other words, the fact that the offenses stem from the same act merely informs us that there is a potential problem, it is not a solution to the problem. The ultimate focus is on the identity of the offenses, not on the identity of their source."

*Id.* at 897. The appropriate test in determining whether a single act constitutes two offenses is whether each offense requires proof of an additional fact which the other does not. *Id.* at 895 (quoting *Brown v. Ohio*, (1977) 432 U.S. 161, 97 S.Ct. 2221, 53 L.Ed.2d 187 and *Blockburger v. United States*, (1932) 284 U.S. 299, 52 S.Ct. 180, 76 L.Ed. 306).

In proving that Isaac engaged in an illegal exhibition under IC 35–30–10.1–2(2) [hereinafter referred to as the obscene materials statute], the State was required to prove the following four elements: (1) knowing or intentional, (2) exhibition, (3) of obscene matter, (4) to another person. Because what the State alleges to be two offenses occurred at the same time and by identical actions, the first three elements in proving two separate offenses are identical. As the State concedes, the only distinguishing "element" is the identity of the viewer. Thus, the question becomes whether the identity of the person witnessing Isaac's exhibition was an actual element of the offense. Differently stated, does "another person" include one or *more* persons?

In considering this question, one is immediately struck with the similarities between this type of prohibited conduct and the con-

duct involved in the "single larceny doctrine", which prevents convictions of multiple thefts when property belonging to the same person or several persons is taken at the same time and from the same place. *See* 3 *Wharton's Criminal Law* §§ 358–59 (14th ed. 1980). Applied by an "overwhelming majority" of jurisdictions, Annot., 37 *A.L.R.3d* 1407, 1409 (1971), the single larceny doctrine has long been cited as a guiding rule in Indiana, *see State v. Elder,* (1879) 65 Ind. 282, and followed in numerous Indiana decisions. *Williams v. State,* (1979) Ind., 395 N.E.2d 239; *Furnace v. State,* (1899) 153 Ind. 93, 54 N.E. 441; *Holt v. State,* (1978) Ind.App., 383 N.E.2d 467. *See also Bryant v. State,* (1969) 252 Ind. 17, 245 N.E.2d 156; *Bell v. State,* (1873) 42 Ind. 335; *Jackson v. State,* (1860) 14 Ind. 327.

■ The rationale behind the rule is that the simultaneous taking of several articles from the same location is the result of a single intent and design. *Holt, supra;* 2 *Wharton's Criminal Law and Procedure* §§ 450–51 (Anderson ed. 1957). The particular ownership or the number of articles taken does not give character to the act of theft, but is merely a part of the description of the offense committed. *Furnace, supra; Holt, supra.* We find this rationale controlling in this case and are unaware of any authority calling for the application of any exception to the general rule.

■ Like a thief stealing several articles from the same house at the same time, Isaac's exhibition was pursuant to a single intent and design. And to *whom* he showed the obscene photographs is of no consequence. The identity and number of Isaac's viewers merely described his exhibition to "another person". Both of Isaac's convictions required the same proof, and under *Elmore,* two convictions would therefore be improper.

■ Our conclusion is also supported by the rule that statutes in pari materia must be considered together. *Schrenker v. Clif-*

*ford,* (1979) Ind., 387 N.E.2d 59; *Connell v. Logansport,* (1979) Ind.App., 397 N.E.2d 1058. The obscene material statute provides that:

"A person who *knowingly or intentionally* ... offers to distribute, distributes, or *exhibits to another person obscene matter* ... commits a Class A misdemeanor."

IC 35–30–10.1–2 (emphasis supplied). By comparison,

"[a] person who *knowingly or intentionally* engages or participates in, manages, produces, sponsors, presents, *exhibits,* photographs, films, or videotapes *any obscene performance* commits a Class A misdemeanor"

under the obscene performance statute. IC 35–30–10.1–3 (emphasis supplied). The exhibition of obscene motion pictures is proscribed by *both* statutes.[8]

■ As we have determined, a film exhibition to more than one person constitutes a single offense under the obscene performance statute because a performance is an "exhibition or presentation ... performed before an audience of one (1) or more persons." IC 35–30–10.1–1. Therefore, an interpretation of the obscene materials statute allowing multiple convictions for one showing of a film would nullify the legislative intent of the more specific obscene performance statute. Under such an interpretation, prosecutors could seek, and obtain, multiple convictions for a single exhibition of an obscene film by using the obscene material statute—a result the obscene performance statute clearly prohibits. We cannot ignore the plain objective of the obscene performance statute, *Wedmore v. State,* (1954) 233 Ind. 545, 122 N.E.2d 1; *State v. Kokomo Tube Co.,* (1981) Ind.App., 426 N.E.2d 1338, or presume the legislature intended it to have no effect. *Wilson v. Stanton,* (1981) Ind.App., 424 N.E.2d 1042.

To summarize, Isaac committed but one offense when he simultaneously showed

---

**8.** *Compare* IC 35–30–10.1–1(a) (" 'Matter' means ... any picture, drawing, photograph, *motion picture,* or other pictorial representation ....") (emphasis supplied) *with* IC 35–30– 10.1–1(b) (" 'Performance' means any play, *motion picture,* dance, or other exhibition or presentation ....") (emphasis supplied).

pornographic material to J. S. and J. M.; his convictions of the two counts of exhibiting obscene matter therefore violated his right not to be placed twice in jeopardy for the same offense. The mills of justice do not grind so fine as to allow the division of an offense into multiple parts. *See Jackson, supra; Holt, supra.* But they do grind fine enough to recognize that an obscene film can be exhibited on two separate occasions, thereby justifying Isaac's convictions of two counts of exhibiting an obscene performance.

The judgment and sentence upon one count of exhibiting obscene matter is ordered vacated, and the cause is remanded to the trial court for that purpose. In all other respects, the judgment of the trial court is affirmed.

SHIELDS and SULLIVAN, JJ., concur.