Christopher D. MORITZ,
Defendant-Appellant,

v.

STATE of Indiana, Plaintiff-Appellee.

No. 1–783A215.

Court of Appeals of Indiana,
First District.

June 26, 1984.

Rehearing Denied July 30, 1984.

Kenneth A. Layton, David W. Paugh, Montgomery, Elsner & Pardieck, Seymour, for defendant-appellant.

Linley E. Pearson, Atty. Gen. of Ind., Lisa M. Paunicka, Deputy Atty. Gen., Indianapolis, for plaintiff-appellee.

NEAL, Presiding Judge.

## STATEMENT OF THE CASE

Defendant-appellant, Christopher D. Moritz (Moritz), was convicted of four counts of bribery under IND.CODE 35–44–1–1(a)(2), a Class C felony, by a Lawrence County Circuit Court jury. From an executed sentence of five years he appeals.

We affirm in part and reverse in part.

## STATEMENT OF THE FACTS

As a result of a widespread investigation by Indiana State Police officers into illegal kickbacks received in exchange for the purchase by municipalities of chemical products (Chemseam), Moritz, Mayor of the City of Seymour, was indicted by a Jackson County grand jury on 36 separate offenses of malfeasance in office including the six charges of bribery involved here. Eleven other defendants were indicted including salesmen and other Seymour city officers and employees. After venue was changed to Lawrence County, the six bribery cases against Moritz were consolidated and tried together, resulting in conviction on four of the charges and acquittal on the other two charges. The essence of each bribery charge was the same. Leo Trimpe, a chemical salesman, testified that he paid Moritz money in return for orders of chemical products made by Moritz for the City of Seymour.

## ISSUES

Moritz raises eleven issues on appeal. Restated for brevity, they concern the following:

 I. Prosecutorial misconduct.

 II. Failure to impose sanctions for violations of a discovery order.

III. Error in ordering transcript and filing of grand jury testimony.

IV. Error in limiting cross examination of Leo Trimpe.

V. Failure to grant mistrial for violation of motion in limine.

VI. Admission of hearsay evidence.

VII. Refusal to admit opinion evidence of impressions as to a third party.

VIII. Failure to grant judgment on the evidence based upon a variance between the indictment and evidence at trial.

IX. Sufficiency of the evidence.

X. Refusal to admit polygraph of defendant at sentencing concerning his guilt.

XI. Error in weighing mitigating circumstances.

## DISCUSSION AND DECISION

*Issues I, II and III: Prosecutorial Misconduct.*

Under these issues Moritz argues the court erred in failing to grant his pre-trial motion to dismiss barring re-prosecution. This motion was based on prosecutorial misconduct consisting of (1) disclosure of the grand jury proceedings; (2) extra judicial statements made to the press; and (3) violation of the court's discovery order. The factual underpinning of these arguments is as follows:

1. *Grand Jury Proceedings.* Prior to the time venue was changed from Jackson County to Lawrence County, the trial court entered a discovery order applicable to all 171 chemscam indictments and to all 12 defendants involved. As a part thereof, it ordered the state to "prepare and file a copy of the grand jury testimony". The state complied and placed the grand jury transcript in the court's files. A reporter for the Seymour Tribune testified at the hearing on Moritz's motion to dismiss that he secured specific permission from the trial judge to copy the transcript, which he did. Thereafter, the Seymour Tribune printed news stories based upon the information contained in the transcript. The evidence at the hearing affirmatively showed the prosecutor, Doboze, did not authorize the press to use the grand jury transcript in any way. The above evidence is undisputed.

2. *Extra Judicial Statements.* The media coverage of the "chemscam" story has been described as massive. The record of the hearing on Moritz's motion to dismiss contains copies of 20 lengthy news stories covering the many indictments of city officials and employees, whose pictures often adorned the articles. The prosecuting attorney was quoted intermittently throughout the 20 articles; however, he denied he was the source of these scattered comments concerning the overall investigation, the time expended on it, its justifications and resultant indictments and arraignments. He stated that he anticipated a multitude of motions to be filed, and a change of venue from the county. The prosecutor was also quoted as saying Moritz should resign. He had comments on the city council's monitoring of expenditures, the workings of chemscam, and its cost to the city. He quoted a city official as saying the "commission" had been paid to a political party fund.

3. *Violation of Discovery Order.* Commencing January 19, 1982, various discovery orders applicable to all the chemscam cases were entered. The discoverable material, which included statements and grand jury testimony, was mountainous and required months to transcribe and assemble. The State Police were faced with a logistic problem created by the 171 separate indictments of the 12 defendants which charges were venued into different counties. In addition, there were other chemscam investigations proceeding in other counties involving some of the same witnesses. Returns on the discovery order were made by the state periodically throughout 1982. Cassettes of statements were filed as late as February 24, 1983, two days after the trial had started. Over this time span, Moritz filed various motions for sanctions which were heard by the trial

court. After voir dire was completed on February 25, the court granted a motion for continuance in favor of Moritz until February 28, the specific date requested by Moritz to afford him an opportunity to evaluate the late discovery. No other motion for continuance was made.

■ We first observe that because of pre-trial publicity the six bribery cases against Moritz which are relevant here were venued from Jackson to Lawrence County. No contention is made that the voir dire examination of the Lawrence County jurors reflected any knowledge of the parties or the facts which was prejudicial to Moritz. Much of Moritz's argument consists of strident and accusatory characterizations of the prosecutor's acts as blatant "misconduct and overreaching". To reach this conclusion, he assumes the prosecuting attorney deliberately suppressed relevant discovery material, deliberately caused the grand jury testimony to be made public, and deliberately made statements to the press in order to try Moritz in the news media. He omits from his brief any mention of the trial judge's role in the release of the grand jury's testimony. There is nothing in the record that compels his factual conclusions or even permits them. He cites *Maldonado v. State*, (1976) 265 Ind. 492, 355 N.E.2d 843, and *United States v. Kessler*, (5th Cir.1976) 530 F.2d 1246 and other like cases concerning mistrial for prosecutorial misconduct *during* trial as authority for the proposition that the court is *mandated* to grant a dismissal barring further prosecution for *pre-trial* prosecutorial misconduct. He cites the Code of Professional Responsibility, DR. 7–107 and 1–102, concerning extra judicial statements or the dissemination of information about a criminal proceeding. He asserts without authority that the prosecutor was bound to file all the counts against him in one indictment. He cites IND.Code 35–1–15–16 and cases forbidding disclosure of grand jury proceedings to support abstract propositions of due process and fair trial. He cites no authority whatever, and we have found none, which mandates a trial court to grant a dismissal barring further

prosecution for pre-trial prosecutorial misconduct. Even granting a mistrial for prosecutorial misconduct during trial is ordinarily within the discretion of the trial court. *Ramos v. State*, (1982) Ind. 433 N.E.2d 757. The usual remedy is a new trial.

■ Primarily relied upon by Moritz at the hearing on the motion to dismiss, and here, is the release of grand jury testimony to the press. Factually, this was not an act of the prosecuting attorney, who simply obeyed the discovery order and filed the transcript with the court. Moritz characterizes this as filing it in a "public" file, though he does not inform us of the distinction between a court's "public" file and a non-public file. In any event, the disclosure was a result of the trial judge's acts, not those of the prosecutors. Though the order for the preparation of the transcript was made in another chemscam case, it was for Moritz's benefit, as well as other defendants, and Moritz did not object to the order. Later, Moritz himself filed a motion and received an order on August 18, 1982 for the grand jury testimony. He utilized this information and cannot now argue that the court erred in ordering it prepared.

The provisions for secrecy of grand jury proceedings have been held to be for the benefit of the jurors and witnesses, and not the defendant. *Reichert v. Commissioners of Internal Revenue*, (7th Cir.1954) 214 F.2d 19 cert. denied 348 U.S. 909, 75 S.Ct. 294, 99 L.Ed. 713. *Rennert v. State*, (1975) 263 Ind. 274, 329 N.E.2d 595. *State v. Bowman*, (1981) Ind., 423 N.E.2d 605. Even for change of venue purposes, and for continuance purposes, any ruling regarding publicity is addressed to the sound discretion of the trial court. In that regard the trial court should consider the following factors: (1) the right of the news media to fairly and accurately report the news; (2) the right of the defendant to a fair trial before an impartial tribunal free from the influence of generated prejudice and inflamed passions of the community; and (3) the right of citizens to fully comprehend

and analyze the portent and direction of the administration of our court system. *Moore v. State*, (1972) 154 Ind.App. 482, 290 N.E.2d 472; *Daniels v. State*, (1983) Ind., 453 N.E.2d 160; *Resnover v. State*, (1984) Ind., 460 N.E.2d 922.

In light of previous court decisions dealing with the treatment of pre-trial publicity, we conclude that a defendant has no right to a dismissal on that ground. His remedy is either a change of venue to an adjacent or an even more remote county, or a continuance, depending on the circumstances. We find no error in the court's denial of Moritz's motion to dismiss. The change of venue was sufficient to preserve his right to a fair and impartial trial.

Imposition of sanctions for failure to comply with discovery orders is discretionary with the trial court, and this rule applies to a decision to permit a witness to testify. *Glover v. State*, (1982) Ind., 441 N.E.2d 1360; *Murray v. State*, (1982) Ind., 442 N.E.2d 1012. Where properly discoverable evidence is revealed for the first time at trial the defendant may move for a continuance or for exclusion of the testimony. The evidence is excludable when the court finds that the state blatantly and deliberately refused to comply with a discovery order. Absent clear error, the trial court's determination as to the existence of a violation and the appropriate sanctions will not be overturned. *Murray, supra.* Here the discoverable material was voluminous and much transcription was necessary. Some of the belated material was described as cumulative. Moritz has indicated no tangible prejudice; his argument centers around the fact that statements by William "Lum" Steele, and Trimpe were filed late. Moritz had notice and copies of some statements by both as early as October 1982. Steele did not testify. We find no abuse of discretion in the court's ruling.

*Issue IV: Limiting Cross-Examination.*

Leo Trimpe, a chemical salesman, testified in substance that he had given bribes to Moritz for the purchase of his chemicals for the city. At the onset of his testimony, Trimpe acknowledged he had been given complete immunity in exchange for his testimony. On cross-examination, Trimpe unfolded a pattern of conduct in his business in order to promote sales which included furnishing prostitutes for clients, buying them gifts and making cash payments to them. A question was asked:

"If it was within your power to have bought your way out, would you have done that?",

and the court sustained the State's objection. He stated there were hundreds of cases for which he could be prosecuted and he had sought and obtained immunity for all of them in exchange for his testimony. It was "every man for himself", said Trimpe, and he did not care "who in the police burned". Also in answer to defense counsel's questioning, Trimpe admitted he had been charged with the theft of some checks in Bartholomew County in 1976, and as part of a plea agreement some of the charges had been dismissed, while he pleaded guilty to others. These matters were wholly unrelated to the chemscam cases, and were objected to by the State. However, the court permitted portions of defendant's Exhibit C to be admitted, after previously sustaining an objection to their admission which disclosed sentencing on four counts of theft and dismissal of five counts of theft in Bartholomew County, pursuant to a plea agreement.

Moritz argues his cross-examination of Trimpe was prejudicially limited; that an answer to the refused question and evidence of the prior plea agreement would have shown Trimpe bought his freedom by falsely testifying against Moritz. We disagree. The refused question was purely conjectural, and Trimpe admitted he was testifying in exchange for immunity. Sufficient evidence of the plea agreement relating to the Bartholomew County check theft charges was admitted to show that Trimpe had secured immunity for testimony in the past.

It requires no citation of authority to demonstrate that cross-examination is

permitted to show bias, prejudice, self-interest and motive. We find no sheltering from impeachment, as argued by Moritz, as existed in *Davis v. Alaska,* (1974) 415 U.S. 308, 94 S.Ct. 1105, 39 L.Ed.2d 347. Trimpe was as thoroughly impeached as one could imagine, and any other matters at best would be cumulative. The scope of cross-examination is addressed to the sound discretion of the trial court. *Haeger v. State,* (1979) 181 Ind.App. 5, 390 N.E.2d 239; *Lovko v. Lovko,* (1978) 179 Ind.App. 1, 384 N.E.2d 166. Even if discretion is abused, we will reverse only if there was an erroneous exclusion of evidence vital to appellant's case. *Loveko, supra.* Finally, impeachment cannot be predicated upon dismissed criminal charges not reduced to convictions. *Randall v. State,* (1983) Ind. 455 N.E.2d 916; *Hodge v. State,* (1982) Ind., 442 N.E.2d 1006. We find no error.

## Issue V: Mistrial.

Prior to trial Moritz filed a motion in limine concerning certain matters which also contained a prayer "... and further instruct the State of Indiana and the counsel and witnesses not to make any reference to the fact that the motion in limine was filed and granted ...". The motion was granted in general terms and it is not shown that the prosecuting attorney was instructed, or knew of the above prayer. During trial the prosecuting attorney stated to the court:

> "... the next series of questions I would ask the witness might invade the motion in limine order by the court and under your directions I would ask for a short hearing outside the presence of the jury."

Because of this statement Moritz moved for a mistrial which motion the court denied. The record affirmatively discloses that Moritz made no motion to strike the remark and to admonish the jury, or to show why an admonishment would not have cured the asserted prejudice. He has preserved no error. *David Johnson Company v. Basile,* (1964) 136 Ind.App. 611, 199 N.E.2d 478; *Riverside Insurance Co.*

*v. Pedigo,* (1982) Ind.App., 430 N.E.2d 796. In addition, granting a mistrial is addressed to the sound discretion of the trial court. *Ramos, supra.* Further, ·Moritz must show that the error placed him in a position of grave peril, which he has not. *Morgan v. State,* (1981) Ind., 419 N.E.2d 964. Here the colloquy between the prosecuting attorney and the court could have been at worst, nothing but incomprehensible to the jury. Not every small irregularity in a trial is a ground for reversal. We find no error.

## Issue VI: Hearsay.

During his testimony, Trimpe presented evidence of a transaction in late November, 1975 following Moritz's defeat in the November election, where Moritz accepted a bribe for back-dated orders. The transaction involved William "Lum" Steele who signed the orders. There was testimony that "Lum" had taken bribes in other matters. Theodore Schenberg, Trimpe's then employer, later was called as a witness, and confirmed Trimpe's *modus operandi.* Schenberg too had been indicted and pleaded guilty.

On cross-examination Schenberg, in answer to questions propounded by Moritz's counsel, testified that in 1975 he had given money to Trimpe to pay "Lum" Steele in his (Schenberg's) office. He was asked about three big orders in November, 1975, for which Moritz allegedly received kickbacks. He answered in effect that he remembered such an order involving Moritz. He also stated Moritz did not receive any money in his office, and that he had no personal knowledge of any payments to Moritz.

On re-direct examination the following exchange occurred:

> "Q. No, Mr. Layton asked you about the big order in 1975 to Amchem in which Mr. Steele had been in your office, is that correct?
> A. That's correct.
> Q. And Mr. Trimpe also?
> A. That's correct.

Q. Was it your understanding that any other person was to share in that kickback?

A. Yes.

Q. And what other persons were there?"

Counsel for Moritz objected on the basis of hearsay and was overruled. Schenberg then stated:

"At the time the kickback was made to Lum Steele in my office in November of '75, December of '75, Mr. Steele indicated made references to the fact that the Mayor will appreciate it."

▮▮▮▮ Moritz argues that the testimony was inadmissible hearsay, and reversible error because Steele did not testify and was not subject to cross-examination. *Patterson v. State,* (1975) 263 Ind. 55, 324 N.E.2d 482. We first observe that the statement was cumulative to the direct testimony of Trimpe that he had taken a bribe for back-dated orders in November, 1975. *See Harter v. Brindle,* (1969) 145 Ind.App. 411, 251 N.E.2d 590. Secondly, in light of all the evidence at trial this testimony was of minimal importance and not of sufficient gravity to generate such prejudice as to require a new trial. Before error in the admission or rejection of evidence may justify reversal, the error must relate to a material matter of such character as to substantially affect the rights of the parties. *Loveko, supra.* Finally, Moritz opened the door on cross-examination by exploring the conversations and dealings conducted in Schenberg's office. *Cronk v. State,* (1983) Ind.App., 443 N.E.2d 882; *Drollinger v. State,* (1980) Ind., 409 N.E.2d 1084. We find no error.

*Issue VII: Exclusion of Evidence.*

▮▮▮▮ Moritz claims reversible error in the exclusion of certain evidence during his own testimony on direct examination. Moritz stated that in January 1980 Leo Trimpe came to his office to sell Gebron Chemical products to the city, stating that he had already spoken with "Lum" Steele. Moritz testified he then called "Lum" and "Lum" told him that the street department needed the material. The following colloquy occurred next:

"Q. Did he seem anxious to deal with Leo?

A. No he didn't.

Q. What was your impression about his willingness to deal with Leo?"

The court sustained the state's objection to this question based on hearsay. No offer to prove was made and no error is thus preserved. *Gradison v. State,* (1973) 260 Ind. 688, 300 N.E.2d 67. Additionally, it appears the question was answered, and the area of interrogation was of questionable relevance. Relevance is addressed to the sound discretion of the trial court. *White v. State,* (1972) 154 Ind.App. 585, 290 N.E.2d 493; *Loveko, supra.* Finally, no reversible error can be predicated upon a ruling on an evidentiary objection which is sustainable upon any basis. *Vandalia Railway Company v. Keys,* (1910) 46 Ind. App. 353, 91 N.E. 173. As a general rule, it is impermissible for a witness to speculate on the thought processes of another person. *Clay v. State,* (1976) 264 Ind. 495, 346 N.E.2d 574. We find no error.

*Issues VIII and IX: Variance and Sufficiency of Evidence.*

▮▮▮ As concerns this appeal, six separate indictments were returned against Moritz by a Jackson County grand jury, which indictments were then venued to Lawrence County. There, they were consolidated for trial. For clarity in this discussion we will label these as Counts 1 through 6. Under IND.CODE 35-44-1-1(a), Moritz was charged in each of the indictments with accepting money from Leo Trimpe with the intent to control an act related to his employment and function as mayor of Seymour in the purchase of supplies. The specific dates and amounts of the bribes are alleged as follows:

| Count | Cause Number | Date | Amount |
|---|---|---|---|
| 1. | C-82CR 23 | February 4, 1980 | $2,969.00 |
| 2. | C-82CR 26 | February 28, 1980 | 1,109.40 |
| 3. | C-82CR 24 | March 6, 1980 | 1,170.00 |
| 4. | C-82CR 28 | March 6, 1980 | 120.00 |
| 5. | C-82CR 25 | June 1, 1980 | 1,474.00 |
| 6. | C-82CR 27 | June 20, 1980 | 183.00 |

Moritz was found not guilty of counts 5 and 6. Trimpe testified there were two meetings between Trimpe and Moritz in which bribes were agreed upon; one in November, 1979 after Moritz was elected mayor, and another in May, 1980. In the November, 1979 meeting, Moritz placed five orders for materials, which were post-dated to a time after Moritz assumed office. Four of these orders were signed by Moritz and one was signed by Roger Mousa at Moritz's direction. The existence of the five orders and payments therefor by the city of Seymour, is not contested; each is completely documented by purchase order, billing, claim and check. The existence of bribes made by Trimpe and accepted by Moritz in connection with these orders is contested. The evidence concerning the bribes was provided solely by Trimpe. We will label the five orders made in November, 1979 (a) through (e) for discussion.

*Order (a)* was for four 55-gallon drums of .herbicide and one 55-gallon drum of truck wash totaling $3,698.35, for which Moritz was to receive a 30% kickback in the amount of $1,109.60. The order was post-dated February 28, 1980. *Order (b)* was for 1,045 gallons of road sealer totaling $4,807.00, for which Moritz was to receive a kickback of $1.00 per gallon, or $1,045.00. That order was post-dated to March 5, 1980. *Order (c)* was for one 55-gallon drum of lift station degreaser totaling $455.00 for which the kickback to Moritz was 20% or $89.00, and 10% to Mousa or $45.00. Mousa had signed that order and it was post-dated to March 14, 1980. *Order (d)* was for 300-gallons of street marking paint totaling $3,900.00 for which the kickback to Moritz was $1.00 per gallon or $300.00. This order was also post-dated to March 5, 1980. *Order (e)* was for four 55-gallon drums of mosquito control totaling $2,805.00, for which Moritz was to receive a kickback of 30% or $841.00. This order was post-dated to February 14, 1980. All bribes agreed upon and post-dated totaled $3,384.00.

Trimpe testified that pursuant to the above agreement he paid Moritz a lump sum of $2,900.00 in the middle of December, 1979, the lesser sum reflecting a deduction of taxes which Trimpe must absorb because the bribe was paid out of his sales commission. The payment covered all five orders, (a) through (e), which were agreed upon at the same November, 1979 meeting.

Trimpe returned in May, 1980 and at one meeting Moritz and Trimpe agreed upon three more orders, which for discussion we will label (f), (g) and (h).

*Order (f)* was an order for ten 5-gallon pails of "mud-go" dated June 20, 1980, totaling $960.00 for which Moritz's kickback was 20%, or $192.00. *Order (g)* was an order for ten 5-gallon pails of sewer solvent totaling $975.00 dated July 2, 1980, for which Moritz's kickback was 20% of $195.00. *Order (h)* was an order for 1,045 gallons of road sealer totaling $4,807.00, for which Moritz's kickback was $1.00 per gallon, or $1,045.00. Orders (f), (g) and (h) were likewise fully documented by purchase orders, billings, claims and checks and their existence is not contested. The contested bribe's existence was dependent upon Trimpe's testimony. Trimpe testified that he paid Moritz $1,800.00 or $1,900.00 in a lump-sum at the same May meeting when those orders were placed.

Clearly orders (f), (g) and (h) apply to Counts 5 and 6, for which Moritz was found not guilty. We will confine the remainder of our discussion to Counts 1, 2, 3 and 4. We have recited all of the pertinent evidence of the actual passing of a bribe which would tend to support a conviction under those counts on orders (a), (b), (c), (d) and (e).

Under Issue VIII, Moritz argues there is a fatal variance between the dates charged in the acceptance of the bribes; February and March, 1980, and the evidence of payment in December, 1979. He asserts without any cogent demonstration of such, that he was misled in the preparation of his defense and placed in danger of double jeopardy.

In bribery cases, like most felonies in which time is not of the essence, where a specific date is charged for the offense, the

state may prove any date prior to the indictment and within the statute of limitations. *Herman v. State*, (1965) 247 Ind. 7, 210 N.E.2d 249. This doctrine is limited, and reversal is required only where it is shown that the defendant was misled in his defense, or when the evidence may not preclude second jeopardy. *Thomas v. State*, (1968) 251 Ind. 76, 238 N.E.2d 20. A variance as to the amount of a bribe and the date of the bribery offense up to two months has been held not to be fatal. *Smith v. State*, (1960) 241 Ind. 1, 168 N.E.2d 199. Here, the evidence as to Counts 1, 2, 3 and 4 was very explicit, as shown by the documentation of the orders involved and no second jeopardy could be threatened. Moritz has made no effort to demonstrate how he was misled in his defense.

The only evidence sufficient to sustain any conviction is recited in Orders (a) through (e). Order (a) identically supports Count 2, with the exception of the variance of date. Order (b) substantially supports Count 3 and Order (c) substantially supports Count 4. All of these orders were made and agreed upon at one meeting in November, 1979. The bribe or bribes therefor were paid in one lump-sum amount of $2,900.00. Conviction under Count 1 is supported by inclusion of the bribes agreed upon in Counts 2, 3 and 4, which were all paid in a single amount, that in Count 1. In effect, conviction of Count 1 and conviction of Counts 2, 3 and 4 are duplicious and the two cannot stand side by side.

IND.CODE 35-44-1-1(a)(2) states:

"(a) a person who:

\* \* \* \* \* \*

(2) Being a public servant, solicits, accepts, or agrees to accept, either before or after he becomes appointed, elected, or qualified, any property, except property he is authorized by law to accept, with intent to control the performance of an act related to his employment or function as a public servant;

\* \* \* \* \* \*

commits bribery, a Class C felony."
The prohibitive conduct is accepting property "with intent to control the performance of an act". One meeting involving one transacted agreement and one payment was involved for five orders.

In *Isaac v. State*, (1982) Ind.App., 439 N.E.2d 1193, where multiple acts of exhibiting obscene literature were involved, the court said:

"In considering this question, one is immediately struck with the similarities between this type of prohibited conduct and the conduct involved in the 'single larceny doctrine', which prevents convictions of multiple thefts when property belonging to the same person or several persons is taken at the same time and from the same place. *See* 3 *Wharton's Criminal Law* Sec. 358–59 (14th ed. 1980). Applied by an 'overwhelming majority' of jurisdictions, Annot., 37 A.L.R.3d 1407, 1409 (1971), the single larceny doctrine has long been cited as a guiding rule in Indiana, *see State v. Elder*, (1879) 65 Ind. 282, and followed in numerous Indiana decisions. *Williams v. State*, (1979) [271] Ind. [656] 395 N.E.2d 239; *Furnace v. State*, (1899) 153 Ind. 93, 54 N.E. 441; *Holt v. State*, (1978) Ind.App., 383 N.E.2d 467. *See also Bryant v. State*, (1979) 252 Ind. 17, 245 N.E.2d 156; *Bell v. State*, (1873) 42 Ind. 335; *Jackson v. State*, (1860) 14 Ind. 327.
The rationale behind the rule is that the simultaneous taking of several articles from the same location is the result of a single intent and design. *Holt, supra;* 2 *Wharton's Criminal Law and Procedure* Sec. 450–51 (Anderson ed. 1957). The particular ownership or the number of articles taken does not give character to the act of theft, but is merely a part of the description of the offense committed. *Furnace, supra; Holt, supra. We find this rationale controlling in this case and are unaware of any authority calling for the application of any exception to the general rule.*
439 N.E.2d at 1196–97 (emphasis added).

The court held that exhibiting an obscene film to a number of persons at one time

was one offense, while exhibiting the film at different times constituted separate offenses.

In *Williams v. State,* (1979) 271 Ind. 656, 395 N.E.2d 239, the court held that taking money from four tellers at one bank at one time was one robbery. The expression "unitary transaction" was used.

 There was one transaction between Trimpe and Moritz for which Moritz was paid a single lump-sum of $2,900.00, in exchange for five orders of supplies for the city. There was a single intent and design, a bribe in exchange for the purchase of materials. The fact that it was separated into five orders for the same city at the same time does not later that result. We are of the opinion that one offense was committed, the one described in Count 1. Counts 2, 3 and 4 are duplicious, and the trial court is ordered to vacate those judgments. The discrepancies between the dates of February 4, 1980 and the middle of December 1979, and the discrepancy of $69.00 in the amount of the bribe are not fatal.

*Issue X: Polygraph.*

At the sentencing hearing, the court sustained the State's objection to Moritz's offer of a post-trial polygraph report, which Moritz asserts in his brief went to his innocence and attitude. The report itself is not in the record, nor is there any statement of its contents.

 Polygraph tests are not admissible generally, absent agreement, for fear of inaccuracies and that the trier might attach undue weight to the result. *Pavone v. State,* (1980) 273 Ind. 162, 402 N.E.2d 976. *Vacendak v. State,* (1976) 264 Ind. 101, 340 N.E.2d 352. In *Allen v. State,* (1980) Ind.App., 406 N.E.2d 976, we rejected a polygraph test tendered at the sentencing hearing which sought to relitigate guilt. It is conceded this ex parte polygraph report offered at the hearing without the presence of the test administrator, is tendered at least in part as evidence on the issue of guilt. On the basis of the record we find no error in refusing its admission.

*Issue XI: Sentencing.*

The court sentenced Moritz in Count 1 to the standard five-year term for a Class C felony and made the following findings:

"FINDINGS OF AGGRAVATING AND MITIGATING CIRCUMSTANCES

In the matter of sentencing the court sets out the following and finds it to be mitigating circumstances:

(1) Imprisonment of Christopher Moritz would result in hardship for his wife, Marian, and his sister.

The court further finds and sets forth the following aggravating circumstances:

(1) That the defendant violated a public trust for which there is not economic or social justification. He was not in need of money to obtain basic food or shelter.

(2) The defendant was involved in the commission of his acts over a period of time.

(3) The defendant is unlikely to respond to probation and a suspended sentence would depreciate the seriousness of the offense.

The court finds the mitigating and aggravating circumstances are such that there should be no deviation from the standard sentence."

Moritz argues that the court erred in not finding mitigating circumstances urged in his testimony at the sentencing hearing, to the effect that: (1) he would never again accept a bribe; (2) he would do community services; (3) he would never participate in illegal activities; and (4) he would make restitution. As relevant here, IND.CODE 35-38-1-7 lists as mitigating circumstances "... (8) that the defendant is unlikely to commit another crime; (9) restitution; (10) hardship on dependants and himself; (d) other matters".

 The authority to determine the length of the sentence is vested in the trial

court. We will reduce the sentence only where it is manifestly unreasonable in the light of the nature of the offense and the character of the defendant. A finding of mitigating circumstances is discretionary with the trial court. *Bryan v. State*, (1983) Ind.App., 450 N.E.2d 53. The trial court was not compelled to believe or to find as fact Moritz's protestations of remorse, and reformation, promises of community services, and the pledge of restitution. Evidence at the sentencing hearing demonstrated a continuing pattern of receiving kickbacks from various salesmen, with Moritz either keeping all of the kickback or sharing it with various department heads. The record discloses a wide spread, malignant pattern of official corruption in Seymour as well as other communities, which was unmasked by the chemscam investigation. The court's findings were completely justified by the record. The sentence imposed and the refusal to suspend it was not manifestly unreasonable. We find no error.

The conviction and sentence for Count 1, C82CR 23 is affirmed. The trial court is directed to vacate sentences in Counts 2, 3 and 4.

Judgment affirmed in part, and reversed in part.

RATLIFF, J., and YOUNG, J. (sitting by designation), concur.