**Diamond Dion WINN, Appellant–Defendant,**

v.

**STATE of Indiana, Appellee.**

**No. 38A02–9901–CR–20**

Court of Appeals of Indiana.

Dec. 30, 1999.

Kelly N. Bryan, Bryan and Bryan, Muncie, Indiana, Attorney for Appellant.

Jeffrey A. Modisett, Attorney General of Indiana, Janet Brown Mallett, Deputy Attorney General, Indianapolis, Indiana, Attorneys for Appellee.

## OPINION

SULLIVAN, Judge

Appellant, Diamond Dion Winn (Winn), appeals his seven convictions for bribery,[1] all Class C felonies.

We affirm in part and reverse in part.

Upon appeal, Winn submits two issues for review:

(1) Whether sufficient evidence exists to sustain Winn's convictions for bribery; and

(2) Whether it constituted double jeopardy to allow Winn to be convicted of seven separate counts of bribery.

The facts most favorable to the jury's verdict reveal that Winn, since 1991, was involved in the video game business in Jay County. The video game machines were placed in various American Legion halls in and around Jay County and involved customers placing money in the machines in the hope of winning money. In late 1995, the Jay County Prosecutor, George Lopez (Lopez), gave an interview to a local newspaper in which he denounced the games as illegal and stated that if he received a complaint, he would file charges and prosecute any individuals involved.

On two occasions, in November and December of 1995, Winn visited Lopez to discuss the video game machines. Winn explained the manner in which the games were operated, to which Lopez replied that they were illegal. On another occasion, Winn asked Curt Compton (Compton), an investigator with the Jay County Prosecutor's Office, if it would change his opinion of the legality of the video games if the games were altered so that players could win prizes or credits rather than money. Compton stated that any kind of payout would be illegal.

On February 13, 1996, Lopez received an envelope in the mail, addressed to him at his home, containing a piece of paper in a diamond shape and a $100 bill. (R–359, 361). On the piece of paper was written the following verse in the following manner:

LET THEM PLAY ANOTHER DAY
& COLLECT A RESIDUAL PAY
WILL DOUBLE MARCH 1
& AGAIN APRIL 1
PROTECT &
COLLECT
GAME
?

(Record at 406.)

Lopez received six more envelopes during the next seven months which also con-

1. I.C. 35–44–1–1 (Burns Code Ed. Repl. 1998).

tained money. On March 4, 1996, he received two $100 bills, both enclosed within a plain sheet of paper devoid of any writing. On April 3, 1996, Lopez received another envelope. This time it contained three $100 bills enclosed inside another plain sheet of paper. Again on May 9, 1996, Lopez was mailed another envelope containing three $100 bills. Lopez next received three $100 bills on June 18, 1996, and an additional two $100 bills on July 24, 1996. Finally, on September 10, 1996, Lopez received another two $100 bills. There were no markings on any of the envelopes that indicated who had sent them to Lopez. Lopez turned all of the money, envelopes and papers over to Jay Halstead, an investigator with the Indiana State Police.

Winn admitted that he had been the person who had mailed the various envelopes containing $100 bills to Lopez. On May 21, 1997, Winn was charged with seven counts of bribery. Pursuant to a jury trial conducted on October 27 and 28, 1998, the jury returned a verdict of guilty on all seven counts of bribery. Winn was sentenced to four years on each count of bribery, to run concurrently, and fined $3,400. The trial court suspended all but six months of his sentence. Winn now appeals.

### INSUFFICIENT EVIDENCE

■ Winn first contends that the evidence is insufficient to support his conviction. Winn's conviction will be affirmed if there is evidence of probative value from which a reasonable trier of fact could find the existence of each element of the offense beyond a reasonable doubt. *Wellman v. State* (1998) Ind.App., 703 N.E.2d 1061, 1062.

■ To convict Winn of bribery, the state had to prove that Winn conferred

money upon Lopez, which Lopez was not authorized to accept, in an attempt to influence Lopez's actions as Jay County Prosecutor.[2] Winn testified that he was the person who mailed Lopez the money. He maintained, however, that his purpose was to gain access to Lopez in order to speak with him, not to bribe him.

■ The only remaining element, therefore, which the State was required to prove was that Winn was attempting to influence Lopez to act in a particular manner in his capacity as prosecutor. The state had to prove that Winn gave the money to Lopez so that Lopez would not prosecute him for gambling. An essential element to the offense of bribery is a quid pro quo. *Wurster v. State* (1999) Ind.App., 708 N.E.2d 587, 594 *aff'd by* (1999) Ind., 715 N.E.2d 341, *reh'g denied.*

During the trial, the state offered the diamond shaped letter which Lopez received from Winn. The printed words were sufficient to lead a reasonable trier of fact, in this case the jury, to infer that Winn was attempting to influence Lopez's actions. We will not reweigh the evidence.

Winn further asserts that his video game machines were not illegal and, thus, he could not have been attempting to influence the actions of Lopez because Lopez could not have prosecuted him in any event. Indiana law provides that it is not a "defense" to a charge of bribery "that the person whom the accused person sought to control was not qualified to act in the desired way." I.C. 35–44–1–1(b) (Burns Code Ed. Repl. 1998). We find there was sufficient evidence to sustain Winn's conviction.

### DOUBLE JEOPARDY

■ Winn next contends that his convictions for seven counts of bribery violate

---

**2.** IND.CODE 35–44–1–1(a)(1) defines the act of bribery as conferring "on a public servant, either before or after the public servant becomes appointed, elected, or qualified, any property except property the public servant is

authorized by law to accept, with intent to control the performance of an act related to the employment or function of the public servant." (Burns Code Ed. Repl. 1998).

the standards of double jeopardy.[3] Double jeopardy concerns usually arise when a defendant is either twice tried or given multiple punishments for the same offense.[4] *Redman v. State* (1997) Ind.App., 679 N.E.2d 927, 928, *trans. denied.* The State asserts that no double jeopardy violations occurred as each one of Winn's seven payments to Lopez constituted a separate offense.

■ In any case, it is not the multiple charges which violate double jeopardy because the defendant is subject to only one judicial proceeding. *Redman v. State, supra,* 679 N.E.2d at 928. If, however, the seven payments are not separate offenses, there may be a conviction upon only one of the charges in order that the defendant is not subject to more than one punishment for the same offense. *Id.*

A similar situation arose in *Moritz v. State* (1984) Ind.App., 465 N.E.2d 748, *trans. denied.* In that case, a city mayor was convicted of four separate counts of bribery where he had received a kickback for chemicals purchased on behalf of the city. There were six separate orders placed for the chemicals. However, Moritz was paid the kickback in one lump sum. We held that because there was "a single intent and design, a bribe in exchange for the purchase of materials," that only "one offense was committed, the one described in Count 1." *Id.* at 758.

■ Our Supreme Court has noted that "[a] crime that is continuous in its purpose and objective is deemed to be a single uninterrupted transaction." *Mahone v. State* (1989) Ind., 541 N.E.2d 278, 280 (quoting *Eddy v. State* (1986) Ind., 496 N.E.2d 24, 28). In this case, Winn was trying to influence Lopez not to prosecute

him for the video games. It was all part of one intent and design. Winn's letter clearly shows his intent to engage in one long term, continuing act of bribery by its statement "Collect a Residual Pay Will Double March 1 & Again April 1 Protect & Collect Game?" Record at 406. This statement manifests Winn's intent to continue to send more money so long as Lopez did not prosecute him. Winn sent money, and as promised in the note, sent more money later.

As earlier recited, the offense of bribery requires the conferring of a benefit upon a public servant "with intent to control the performance of *an* act related to the employment" of that public servant. I.C. 35–44–1–1(a)(1) (Burns Code Ed. Repl. 1998) (emphasis supplied). We find that prosecution for professional gambling, as Lopez suggested might occur, contemplated prosecution for a single act. If Lopez had prosecuted Winn for the video game machines, it would have been a single offense of professional gambling pursuant to I.C. 35–45–5–3 (Burns Code Ed. Repl. 1998). Therefore, Winn cannot be convicted of bribing Lopez seven times when the intent was to induce Lopez not to prosecute him a single time.

We conclude that one offense of bribery was committed which is contained in Count 1. Therefore, we order the trial court to vacate Counts 2, 3, 4, 5, 6, and 7.

The judgment is affirmed in part and reversed in part.

GARRARD, J., and BAILEY, J., concur.

---

3. Each of the seven counts allude to a different date upon which the alleged act of bribery took place. Each of the seven counts, however, assert that defendant's conduct was with intent to control the "performance of *an* act related to the employment or function [as Jay County Prosecuting Attorney]...." Record at 13–15. (Emphasis supplied). The charges

did not specify the act of the prosecutor which was to be performed.

4. The U.S. Constitution reads in pertinent part that no person shall be "subject for the same offense to be twice put in jeopardy of life or limb." U.S. CONST. amend. V.