## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Jun 26 2015, 7:43 am

*Kevin S. Smith*

CLERK
of the supreme court,
court of appeals and
tax court

| ATTORNEY FOR APPELLANT | ATTORNEYS FOR APPELLEE |
|---|---|
| John L. Tompkins | Gregory F. Zoeller |
| Brown Tompkins Lory & Mastrian | Attorney General of Indiana |
| Indianapolis, Indiana | |
| | Larry D. Allen |
| | Deputy Attorney General |
| | Indianapolis, Indiana |

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Terry L. Austin, | June 26, 2015 |
| *Appellant-Defendant,* | Court of Appeals Case No. 30A04-1412-CR-589 |
| v. | Appeal from the Hancock Superior Court. |
| State of Indiana, | The Honorable Terry K. Snow, Judge. |
| *Appellee-Plaintiff.* | Cause No. 30D01-1404-FC-508 |

**Garrard, Senior Judge**

[1] After a jury trial, Terry L. Austin was convicted of one count of bribery[1] as a Class C felony and one count of official misconduct[2] as a Class D felony, and was sentenced to concurrent terms of three years suspended to probation for his bribery conviction and one year suspended to probation for the official misconduct conviction. Austin appeals contending that there is insufficient evidence of the element of quid pro quo to support his bribery conviction. We affirm.

[2] Austin was employed as a lieutenant and shift supervisor for the Greenfield Police Department in 2013 and 2014. In September 2013, Austin's brief marriage to Koleki Wright was dissolved finalizing the contentious legal battle between the two. Wright's driver's license had been suspended since January of 2013.

[3] In December 2013, Austin used Facebook to contact McCordsville Police Officer Shawn Brady, whose patrol area included Wright's residence, about Wright. Austin sent him information about Wright's license status, which he had obtained through the IDACS database, her address, and her driver's license number. He did so even though officers are not permitted to send IDACS information through messaging systems such as Facebook. In that message, Austin also informed Brady that Wright's driver's license was suspended and

---

[1] Ind. Code § 35-44.1-1-2 (2012).

[2] Ind. Code § 35-44.1-1-1 (2012).

offered Brady a $200 gift card for a steak dinner if Brady would initiate a traffic stop and impound Wright's vehicle for driving with a suspended license. Brady did not act on Austin's offer.

[4] On February 18, 2014, at approximately 5:30 a.m., Wright, whose contact information was saved on Austin's cell phone under the moniker "Bitch," sent a text message to Austin informing him that she was traveling for work and could not attend a hearing that the two were to attend that was scheduled for later that day. At approximately 6:00 a.m. that same day Austin sent a text message to his friend, Fortville Police Officer Matt Fox, asking Fox for the cell phone number of McCordsville Police Officer Nathan Garner, whose normal patrol route included Wright's residence. Austin again offered a gift card for a $200 steak dinner to the first one to "nail her" in his message to Fox. Tr. p. 156. After Fox replied that he loved steak, Austin texted, "Nail her ass and it's yours!!!!!" Appellant's App. p. 22. Austin then asked Fox if Garner would "hook [him] up" to which Fox replied "Should." *Id.* Austin sent Wright's IDACS information to Fox from his computer.

[5] Minutes after receiving Garner's cell phone number, Austin sent Wright's IDACS information to Garner, including her suspended license status, in a text message. Austin identified himself by name and as "GPD" in a subsequent text message and asked Garner to call him. *Id.* Garner, who was on active patrol, called Austin, who offered Garner a gift card for a $200 steak dinner if Garner would initiate a traffic stop on Wright for driving with a suspended license. Austin told Garner the make and model of Wright's vehicle and at what time

he expected Wright to leave for work. After the phone call was completed, Austin sent the offer to Garner by text message. Garner did not act on the information supplied by Austin, and at some point later filed a report about the incident.

[6] On February 26, 2014, Austin entered the Hancock County Emergency Operations Center to obtain a print-out of the Computer Aided Dispatch of all officer activity from the previous night. While there, Austin spoke with IDACS coordinator Keri Brady, Officer Shawn Brady's ex-wife. In a loud voice, Austin told Brady that he had offered a gift card for a $200 steak dinner to Brady's ex-husband if he would arrest Wright and "tow her shit." Tr. p. 91. Austin said that he had made the same offer to other officers. Austin spoke loudly enough that other people in the dispatch center overheard Austin's comments.

[7] After that conversation ended, Brady reported Austin's conduct as a possible IDACS violation. Brady spoke to someone with the Indiana State Police and determined that Wright's information had been run through IDACS seventeen times between July 20, 2013 and February of 2014. Brady also contacted Greenfield Police Detective Randy Ratliff, who was in charge of all internal investigations for that department. Ratliff then informed his chain of command about Austin's actions and contacted the Indiana State Police.

[8] In March 2014, Indiana State Police Detective Amy Johnson was assigned to investigate Austin's actions. Detective Johnson obtained records from Ratliff and the report that Garner had filed after the incident. She interviewed Austin

on March 24, 2014, and after he was advised of his rights and signed a waiver, he admitted that he offered a $200 gift card to the first officer to arrest Wright. Austin maintained that he had not done anything wrong by making the offer. The State charged Austin with bribery and official misconduct and the jury found him guilty of both felony offenses.

[9] Austin now appeals contending that there is insufficient evidence to support his bribery conviction. When an appellant challenges the sufficiency of the evidence, we do not reweigh the evidence or reassess the credibility of the witnesses. *Joslyn v. State*, 942 N.E.2d 809, 811 (Ind. 2011). We consider only the probative evidence and reasonable inferences supporting the verdict and will affirm if the evidence and reasonable inferences could have allowed a reasonable trier of fact to find the defendant guilty beyond a reasonable doubt. *Id.*

[10] According to Indiana Code section 35-44.1-1-2(a)(3), a person who confers, offers, or agrees to confer on a person "any property, except property the person is authorized by law to accept, with intent to cause that person to control the performance of an act related to the employment or function of a public servant[]" commits bribery, a Class C felony. Here, Austin admitted that he offered a gift card for a $200 steak dinner to the first officer who arrested or cited Wright for driving while suspended and who impounded her car. He claims that this conduct does not fall within the statute because the police officers he contacted had a duty to enforce the law, and that he merely asked them to perform their duty.

[11] "An essential element to the offense of bribery is a quid pro quo." *Winn v. State*, 722 N.E.2d 345, 347 (Ind. Ct. App. 1999) (citing *Wurster v. State*, 708 N.E.2d 587, 594 (Ind. Ct. App. 1999), *aff'd by* 715 N.E.2d 341 (Ind. 1999), *reh'g denied*). Here, the "quid" was a $200 gift card for a steak dinner to the first officer willing to arrest or cite Wright for driving while suspended. In the ordinary course of their duties police officers were unlikely to discover that Wright's driver's license was suspended unless she was otherwise stopped for some traffic infraction. Austin sought to change that by offering the $200 gift card to the first officer who would seek out Wright and stop her for driving while suspended. It is this effort to control the performance of a police officer by having him go beyond the normal course of his duties to seek out Wright and make an arrest that constituted the "quo" for the offer and made the offense of bribery complete.

[12] Affirmed.

[13] Mathias, J., and Brown, J., concur.