William FRENCH, Appellant,

v.

STATE of Indiana, Appellee.

No. 779S191.

Supreme Court of Indiana.

April 29, 1980.

Nile Stanton, Indianapolis, for appellant.

Theodore L. Sendak, Atty. Gen., Richard Albert Alford, Deputy Atty. Gen., Indianapolis, for appellee.

PRENTICE, Justice.

Defendant (Appellant) was convicted in a trial by jury of Murder in the First Degree, Ind.Code § 35–13–4–1 (Burns 1975), for which he was sentenced to imprisonment for life. This direct appeal presents the following issues:

(1) Whether the trial court erred in refusing defendant's three tendered instructions on self-defense.

(2) Whether the trial court erred in granting the State's "Motion in Limine" regarding the criminal record of the deceased, and in preventing the defendant from inquiring into the reputation of the deceased as to peace and quietude.

(3) Whether there was sufficient evidence of premeditation and malice to sustain the verdict.

\* \* \* \* \* \*

## ISSUE I

Defendant was convicted over his claim that he acted in self defense. The homicide occurred in the parking lot of a tavern, where the decedent, Wardell Marble, and several other men were drinking and visiting in the late afternoon. The defendant testified that when he approached, Wardell and others were gathered in a circle. Nearby was an 18 or 19 year old youth named Grundy, whom the defendant believed was a cousin to Wardell. Defendant was active in youth programs, thought that Grundy did not belong there and lectured him briefly. Defendant then approached the group and spoke to them. Wardell called him "Finch", and defendant corrected him and started to walk away.

Wardell looked directly at the defendant, while whispering to Grundy, came out of the group and towards defendant. At the same time, the others in the group started to spread out, as if to surround the defendant. As Wardell moved towards the defendant he said, "French, I don't like you no way. I ought to kick \* \* \*."

Defendant knew the members of the group to be "wineheads" and "junkies" and was convinced that they were going to "jump" him. He tried to reason with Wardell, as he continued to back away, but Wardell and the others continued towards him.

Defendant had been target shooting and had a 22 cal. target pistol, which he drew, as he backed away, hoping to deter the attack. Wardell had something in his hand but placed it on top of a parked automobile. He reached into his trouser pocket with his right hand and rushed towards the defendant. Defendant knew that Wardell carried a knife, was in fear of his life and decided to shoot the defendant in the leg. Instead, however, he backed into a parked automobile at that moment, which knocked him off balance, and he accidentally fired high, hitting Wardell in the heart.

■ Defendant's account of the incident was diametrically opposed to the testimony of the State's witnesses in almost every particular. Nevertheless, it was substantial probative evidence which entitled him to an acquittal, if it raised a reasonable doubt in the minds of the jurors. Accordingly, the defendant was entitled to have the jury properly instructed upon the law of self defense.

The doctrine of lawful self defense has many facets and understandably the matter of instructing juries thereon has been troublesome. Although the precise instruction to which a defendant may be entitled may vary with the circumstances of the case, the general instruction that has been repeatedly approved and is favored by this Court as an embodiment of the pertinent principles is as follows:

"The Court further instructs you that one person may kill another under such circumstances that the homicide or killing constitute no crime, but is justified by the law. This is known as the law or doctrine of self-defense and may be, and is thus stated for your guidance.

"Whoever, being himself without fault and in a place where he has a right to be, so far as his assailant is concerned, is assaulted, he may, without retreating, repel force by force; and he need not believe that his safety requires him to kill his adversary in order to give him a right to make use of force for that purpose. When from the act of his assailant, he believes, and has reasonable ground to believe, that he is in danger of losing his life or receiving great bodily harm from his adversary the right to defend himself from such danger or apprehended danger

may be exercised by him; and he may use it to any extent which is reasonably necessary, and, if his assailant is killed as a result of the reasonable defense of himself, he is excusable in the eyes of the law. The question of the existence of such danger, the necessity or apparent necessity, as well as the amount of force necessary to employ to resist the attack can only be determined from the standpoint of the defendant at the time and under all the then existing circumstances. Ordinarily one exercising the right to self-defense is required to act upon the instant and without time to deliberate and investigate and under such circumstances a danger which exists only in appearance, is as real and imminent to him as if it were actual.

"A person in the exercise of the right of self-defense must act honestly and conscientiously.

"When all danger and all apparent danger of the loss of life, or of receiving great bodily harm, from the assault of his assailant is at an end and passed, then the right to use force is at an end and should cease. The person exercising the right of self-defense must honestly believe, and have reasonable ground to believe, when he makes use of force to protect himself from an assailant, that at the time he uses the force it is then necessary to do so to protect his life, or to protect his person from great bodily harm.

"One who is in no apparent danger, and who apprehends no danger and who has no reasonable ground for such apprehension cannot kill another and successfully interpose the defense of self-defense." *Martin v. State* (1973) 260 Ind. 490, 296 N.E.2d 793.

The defendant tendered three brief instructions, all of which were on self-defense and all of which were refused. The court acknowledged that they were correct statements of the law but declined to give them because he regarded the court's preliminary instruction No. 15 and its proposed final instruction No. 29 to be sufficient. Those instructions were as follows:

## "COURT'S PRELIMINARY INSTRUCTION NO. 15

"It is the law that one seeking to avail himself of the right of self defense must be himself without fault, and if the evidence shows beyond a reasonable doubt that a defendant himself provoked the attack or brought upon himself the necessity which he sets up in his own defense, or voluntarily put himself in the way of an altercation, or sought a conflict, he is thereby deprived of the right of self defense unless he in good faith made an effort to retreat or abandon the conflict in some manner."

## "COURT'S FINAL INSTRUCTION NO. 29

"A person is justified in using reasonable force against another person to protect himself or a third person from what he reasonably believes to be the imminent use of unlawful force. However a person is justified in using deadly force only if he reasonably believes that that force is necessary to prevent serious bodily injury to himself or a third person in the commission of a forcible felony."

We will not set forth the defendant's requested instructions, as we do not regard them as models. We find, however, that the court's instructions were deficient in at least five particulars included in our preferred instructions and in at least three particulars covered by those tendered and refused. To the extent that the court's instructions fell short of our preferred one and the deficiencies were not supplied by the tendered instructions, the defendant has no cause to complain. A failure to instruct is not subject to appellate review unless a proper request has been made; and, error cannot be addressed to a correct but incomplete instruction, if instructions have not been requested upon the omitted points. *Flowers v. State* (1957) 236 Ind. 151, 168, 139 N.E.2d 185; *Wilson v. State* (1953) 232 Ind. 365, 367, 111 N.E.2d 709. However, three principles included in our preferred instruction but omitted from the court's

instructions were embodied in the instructions tendered.

■ We do not regard the omission, in this case, of the proviso that one claiming the right to defend himself must be in a place where he has a right to be as error, because we do not see how the defendant could have been thereby harmed. The omission tended to broaden rather than to limit the right. But we cannot say that the other two omissions were harmless error.

■ At no point in the instructions given was the jury informed that in the exercise of the right, a defender may repel force by force reasonably necessary and that he will not be accountable for an error in judgment as to the amount of force necessary, provided he acted honestly. Neither did the court's instructions apprize the jury that the existence of the danger, the necessity or apparent necessity, as well as the amount of force required to resist the attack can only be determined from the standpoint of the defendant, at the time and under the then existing circumstances.

In view of these omissions, we cannot say that the jury had the requisite information to enable it to make a proper application of the law to the facts. The substance of the omitted instructions was applicable to the testimony of the defendant, if believed, and we cannot say that these omissions, notwithstanding defendant's timely request, did not deny the defendant of the benefit of reasonable doubt.

■ It should also be noted that the court's instruction advised of the necessity for one who was the attacker or provoker of an altercation to first retreat before he may become entitled to defend himself. This is a correct statement, but, where the evidence is in conflict upon the question of who was the aggressor, fairness seems to demand that it be balanced with an advisement that one who is not the aggressor is not required to retreat. And while, as stated, no instruction was given advising that the necessity for and the reasonableness of the force employed can only be determined from the standpoint of the defender, the

court did instruct that a person is justified in using deadly force *only* if he reasonably believes it to be necessary. Again, the statement is correct, but without a counterbalancing statement may be misleading. Altogether, the instructions, as given, without the inclusion of those tendered, tend to depreciate the defendant's defense. For this reason, we reverse the judgment of the trial court and remand the cause to the trial court with instructions to grant the defendant a new trial.

## ISSUE II

Notwithstanding our remand upon Issue I, it is appropriate that we comment upon the other issues for the guidance of the trial court upon retrial.

■ It was not error for the court to order that the defendant make no reference during the trial to the decedent's criminal record, without first obtaining leave of court outside the presence of the jury. Evidence of the dangerous and violent nature of a decedent is not admissible in a homicide trial, where it appears from the evidence introduced that the accused was the assailant. *Madison v. State* (1971) 256 Ind. 353, 269 N.E.2d 164; *Teague v. State* (1978) Ind., 379 N.E.2d 418; *Osburn v. State* (1905) 164 Ind. 262, 73 N.E. 601. However, when there has been evidence introduced that the accused was exercising his right of self defense, the decedent's reputation and character for peace and quietude, if known to the accused at the time he acted, becomes relevant upon the issue of whether or not he believed himself to be in danger and the reasonableness of his assessment. *Schmanski v. State* (1979) Ind., 385 N.E.2d 1122, 1125; *McKee v. State* (1926) 198 Ind. 590, 598, 154 N.E.2d 372, 375. Hearsay is not a viable objection to the tender of evidence of one's reputation, when offered for such purpose, since it is offered only to evidence the state of mind and the reasonableness or unreasonableness thereof at the time he acted. *Nuss v. State* (1975) 164 Ind.App. 396, 328 N.E.2d 747. In *Boyle v. State* (1884) 97 Ind. 322, it was said, " * * * whoever relies upon appearances, and a rea-

sonable determination upon such appearances, as a defense in a case of homicide, ought to be allowed to prove every fact and circumstance known to him, and connected with the deceased, which was fairly calculated to create an apprehension for his own safety."

 The defendant's assignment of errors addressed to the exclusion of evidence that the deceased was a man of violence is not available to him, because the defendant made no offer to prove. *Niehaus v. State* (1977) 265 Ind. 655, 359 N.E.2d 513. However, to the extent that the court may have excluded testimony that the defendant had reasonable grounds to believe that he was in danger of death or great bodily harm from Wardell and did so believe, it was in error.

## ISSUE III

 In contending that there was insufficient evidence of premeditation and malice, defendant points to his own testimony that he acted in fear for his life and that the gun discharged prematurely when he bumped into a car. However, the jury was not bound to believe that testimony. *See Harris v. State* (1978) Ind., 382 N.E.2d 913, 915 and cases therein cited. We find that the circumstances, as related by other witnesses, were consistent with the existence of premeditation and malice. Defendant's reliance upon our holding in *Shutt v. State* (1977) 267 Ind. 110, 367 N.E.2d 1376, is misplaced. In that case, we stated:

"It is not necessary for us to invade the exclusive province of the jury to determine the weight of the evidence and the credibility of the witnesses, because no reasonable man deliberating in the face of these established circumstances could exclude, beyond a reasonable doubt, the hypothesis that the defendant was motivated by fear or anger, or both, when he struck the fatal blow. The inference of malice, therefore has been counterbalanced and reduced to a mere speculation. And if it is to rise again with sufficient force to stand as an inference or fact which could be found by a reasonable

man, beyond a reasonable doubt, it must be supported by probative evidence aside from the use of the weapon itself." *Id.,* 267 Ind. at 130–131, 367 N.E.2d at 1386.

The facts and circumstances of the instant case are significantly different from those present in the *Shutt* case. In that case, the totality of the evidence was that Shutt acted upon provocation "sufficient to give rise to an impassioned mind incapable of cool reflection." *Id.* at 132, 367 N.E.2d at 1387. However, in the instant case, there is sufficient evidence for a reasonable juror to have concluded, beyond a reasonable doubt, that the defendant was the aggressor and that his shooting of the victim was a malicious act. *See, e. g., Berry v. State* (1978) Ind., 376 N.E.2d 808; *Lawson v. State* (1978) 267 Ind. 668, 373 N.E.2d 128.

For error in refusing the defendant's tendered instruction, as aforesaid, the judgment of the trial court is reversed and the cause is remanded for a new trial.

GIVAN, C. J., and DeBRULER and HUNTER, JJ., concur.

PIVARNIK, J., dissents.