Carmen **STRATTON**, Appellant
(Defendant Below),

v.

**STATE** of Indiana, Appellee
(Plaintiff Below).

No. 1284S491.

Supreme Court of Indiana.

Nov. 20, 1986.

Nancy L. Broyles, McClure, McClure & Kammen, Indianapolis, for appellant.

Linley E. Pearson, Atty. Gen., Cheryl L. Greiner, Deputy Atty. Gen., Indianapolis, for appellee.

SHEPARD, Justice.

Appellant Carmen Stratton was accused of fatally shooting Jeffrey Coleman a few days after he allegedly raped her. Charged with murder, Ind.Code § 35–42–1–1 (Burns 1985 Repl.), she pled insanity as a defense. After the jury returned a verdict of guilty but mentally ill, she was convicted and sentenced to 30 years in prison.

Stratton raises two issues in this direct appeal:

1) Whether the court-appointed psychiatrists, two brothers who shared an office, were "disinterested" within the meaning of Ind.Code § 35–36–2–2, and

2) Whether the trial court properly admitted two autopsy photographs showing a surgical incision.

*I. Psychiatrists*

■ The trial court appointed Drs. James Davis and Larry Davis to examine Stratton to determine her mental state at the time of the shooting and at trial. The psychiatrists were brothers who shared an office. They individually examined Stratton in the Marion County Jail on different days and did not confer with each other before reaching their conclusions. Each doctor testified individually that in his professional opinion Stratton was not insane at the time of the murder. A clinical psychologist hired by the defense testified otherwise.

Stratton claims that the Davis brothers were not "disinterested" as required by Ind.Code § 35–36–2–2, which provides for the appointment of at least two experts to examine a criminal defendant who raises insanity as a defense. Stratton concedes that the doctors were not biased toward the State or against her. Her claim rests on the bald assertion that psychiatrists who share office space and family relationship cannot be "disinterested." [1] She cites no authority supporting this broad proposition but asserts that physicians testifying under these circumstances should be bound by the conflict of interest provisions in the Code of Professional Responsibility governing attorneys in this state.

We conclude that the psychiatrists in this case were not inherently biased simply because they shared professional and familial relationships. They conducted separate examinations and reached independent conclusions, just as unrelated psychiatrists would have done under the same circumstances. While the Code of Professional Responsibility may preclude two related lawyers from participating in the same case, it does not apply to physicians.

Stratton also claims the psychiatrists were not "disinterested" because they based their opinions in part on a single diagnostic test. Stratton completed the multiple choice test in jail outside the doctors' presence. The procedure is commonly used by psychiatrists to determine general personality traits. The test results were calculated by computer and later interpreted individually by the physicians. We fail to see how the use of this test by both psychiatrists affected their impartiality.

*II. Autopsy Photographs*

Stratton also challenges the admission of two autopsy photographs during the pathologist's testimony. One of the color

---

**1.** The term "disinterested" is not defined in Ind. Code § 35–36–2–2 or related statutes. According to Black's Law Dictionary, the term means "(n)ot concerned, in respect to possible gain or loss, in the result of the pending proceedings or transactions; impartial, not biased or prejudiced." The dictionary also describes a "disinterested witness" as "(o)ne who has no interest in the cause or matter in issue, and who is lawfully competent to testify." Black's Law Dictionary 421 (5th ed. 1979). This Court has held that a doctor was disinterested within the meaning of Ind.Code § 35–36–2–2, although he was paid by the state for acting as a psychiatric consultant at the Indiana State Prison. *Nagy v. State* (1979), 270 Ind. 384, 386 N.E.2d 654.

photographs showed a view of the victim's upper torso, including a lengthy surgical incision and numerous stitches. The other photograph offered a more detailed view of the shotgun wound and incision without showing the face of the victim. One photograph illustrated the vertical measurement of the location of the wound; the other showed the horizontal measurement. (The admission of a third photograph is not contested; it offered a side view of the middle and lower torso.) Stratton claims the two disputed photographs were cumulative and unduly prejudicial because both showed the extensive shotgun wound and the incision and stitches.

 Admission of photographs is within the discretion of the trial court. A photograph is admissible if it depicts an object or scene which a witness would be permitted to describe through testimony. *Askew v. State* (1982), Ind., 439 N.E.2d 1350. The photographs in this case illustrated the pathologist's testimony and thus were properly admitted. *Hadley v. State* (1986), Ind., 496 N.E.2d 67. The photographs were not cumulative because each portrayed a different view and measurement of the location of the entry wound.

Stratton further claims that the photographs were confusing because the origin of the incision and stitches went unexplained. We have upheld the admission of autopsy photographs showing extraneous stitches when the nature of the incisions is explained. *Simpson v. State* (1978), 269 Ind. 495, 381 N.E.2d 1229. Although the pathologist in this case used somewhat technical language, he conveyed the fact that the incision and stitches were made by doctors in an effort to save his life. Accordingly, we conclude that the trial court did not abuse its discretion by admitting the photographs.

The judgment of the trial court is affirmed.

GIVAN, C.J., and DeBRULER, PIVARNIK and DICKSON, JJ., concur.