Larry A. KELLEY,
Defendant–Appellant,

v.

STATE of Indiana, Plaintiff–Appellee.

No. 39A01–8905–CR–165.

Court of Appeals of Indiana,
First District.

July. 27, 1989.

Rehearing Denied Sept. 6, 1989.

Anthony J. Castor, Madison, for defendant-appellant.

Linley E. Pearson, Atty. Gen., Jane A. Morrison, Deputy Atty. Gen., Office of Atty. Gen., Indianapolis, for plaintiff-appellee.

BAKER, Judge.

## STATEMENT OF THE CASE

The defendant-appellant, Larry A. Kelley (Kelley), appeals his conviction in the Jefferson Circuit Court of one count of murder, a felony.

We affirm.

## STATEMENT OF THE FACTS

On August 28, 1987, Michael Kidwell (Michael) and his sister, Theresa Barker, drove from Theresa's home in Maryland to the home of their mother, Evelyn Gast, in Hanover, Indiana. Michael had just completed his United States Army basic training at Fort Lee, Virginia, and was on leave until September 13, at which time he was to report to his permanent duty station in Texas. When he arrived home, Michael explained to his mother that he planned to marry his girlfriend, Melanie Kelley, and wanted to talk to her father, Kelley, because he did not approve of the relationship. Michael phoned Kelley at approximately 4:00 p.m. on September 1 and agreed to meet him the next day at a local shopping area. On the afternoon of September 2nd, Michael borrowed Theresa's car and departed to meet Kelley. This was the last time Evelyn or Theresa saw the young soldier alive.

On September 23, 1987, Ken Hoard, was jogging on his farm on Deputy Pike in Jefferson County, Indiana, when he saw a bone sticking out of the ground near an abandoned house. He and his wife took shovels to the abandoned house the next day, and they uncovered the legs of a human skeleton. Hoard telephoned the Sheriff of Jefferson County who arrived at the scene shortly after 1:00 p.m., and secured it for evidence technicians.

An evidence technician with the Indiana State Police videotaped and photographed the scene, then removed the body from the shallow grave and delivered it to the I.U. Medical Center in Indianapolis for autopsy. At approximately 3:00 p.m., September 24, 1984, Detective Sergeant Maxie of the Indiana State Police arrived at the scene and then drove to Kelley's house a very short distance from the abandoned house. He informed Kelley that the police were conducting an investigation in the area and advised Kelley of his Miranda rights. He also asked Kelley to remain at his home until other police officers arrived. When the other police officers arrived approximately two hours later, Kelley, who was on parole, consented to a search of his home and vehicle.

After the police had completed the search and discovered a number of firearms in Kelley's home in violation of his parole, Detective Maxie transported Kelley to the Jefferson County Sheriff's Department. At approximately 7:00 p.m., Detective Sergeant Henry of the Indiana State Police and Willie Lucas, the Marshal of Hanover, took Kelley to the conference room where they gave him food, beverage, and cigarettes and engaged in general conversation. They advised Kelley of his Miranda rights at 8:20 p.m. and Kelley signed a waiver form at 8:25 p.m. Lucas and Henry questioned Kelley off and on until approximately 10:30 p.m., when Kelley asked to speak with the prosecuting attorney about his parole violation. The prosecuting attorney was summoned and spoke with Kelley only briefly. When he left Lucas returned to the room alone and approximately 45 minutes later Kelley confessed to killing Michael. The next morning after signing another waiver form, Kelley confessed a second time. With Kelley's

permission, the police tape-recorded both statements.

At trial the pathologist who performed the autopsy on Michael's body, testified that gunshot wounds to the back of the head and chest were the cause of death. Richard Humphrey testified that in April of 1986, Kelley, after reading the victim's letter to his daughter, made the following statement: "If I could get my hands on [Michael] I would hurt him and hurt him bad." *Record* at 408. Doug Jacobs testified that while he and Kelley were in jail in October of 1986, Kelley told him he was going to kill Michael when he got out.

Kelley testified that he did not approve of the relationship between Michael and his daughter, Melanie, and he agreed to meet Michael on September 2, 1987. According to Kelley's trial testimony, Michael wanted to show him something at the abandoned house near Kelley's home, so Kelley drove to the house. When Michael and Kelley arrived, they went inside the abandoned house, where, according to Kelley, Michael pulled a gun on him. Kelley claims to have kicked the gun out of Michael's hand catching it in midair and firing three shots as Michael turned and fled. Kelley then dragged Michael's body outside, removed his belt buckle, watch, and took the same, together with the gun, and threw them in the Ohio River. The next day Kelley returned to the crime scene and buried the body in a shallow grave adjacent to the abandoned house.

After a jury trial, where Kelley raised self-defense, the jury returned a verdict of guilty to the charge of murder, a felony under IND. CODE 35–42–1–1. Kelley was sentenced by the court to 50 years in prison.

### ISSUES

Kelley presents seven issues for our review, which we restate as follows:

I. Whether the trial court properly allowed the State's witness, Evelyn Gast, to testify as to Kelley's out-of-court statements.

II. Whether the trial court properly admitted Kelley's tape-recorded statements.

III. Whether the trial court properly excluded letters the victim had written to Kelley's daughter.

IV. Whether the trial court properly admitted the State's Exhibit 32, a tape recording of a September 4, 1987, telephone call to the Madison Police Department.

V. Whether the trial court properly admitted the State's Exhibits 13, 14, and 15, photographs of the grave site, and State's Exhibit 18, a photograph of the victim's body.

VI. Whether the trial court properly excluded the testimony of the defense witness, Julie Clark, regarding the victim's character.

VII. Whether the trial court properly refused Kelley's Instructions No. 2 and 5.

### DISCUSSION AND DECISION

ISSUE I:

Kelley claims the trial court erred in allowing Evelyn Gast to testify as to out-of-court statements made to her by Michael because the statements were inadmissible hearsay. Michael's mother testified that her son told her he was planning to marry Kelley's daughter, Melanie, and that he wanted to work out his differences with her father so that Kelley would approve of the marriage. In *Stahl v. State* (1986), Ind.App., 497 N.E.2d 927, this court enunciated Indiana's position with regard to the hearsay rule:

Hearsay is in court evidence of a statement which was made out-of-court, such evidence having been offered to show the truth of the matter asserted. The value of such evidence rests on the credibility of the out-of-court asserter, and as a rule, hearsay is generally not admissible into evidence.

497 N.E.2d at 929 (citation omitted). In *Carter v. State* (1986), Ind., 490 N.E.2d 288, our supreme court noted that an exception to the hearsay rule exists where

the testimony is offered to show the state of mind which controverted the defendant's claim of self-defense:

Hearsay is an out-of-court statement repeated in court to establish the truth of the matter contained therein. These statements were not offered for the truth of the matters they contained, rather they were offered to prove Cynthia's state of mind and show why she went to Carter's house.

490 N.E.2d at 201. Testimony explaining state of mind is an exception to the rule against hearsay. *Morse v. State* (1980), 274 Ind. 652, 413 N.E.2d 885, 887. Here the testimony was offered to show why Michael made arrangements to meet Kelley on September 2, 1987. Therefore, the trial court did not err in allowing the victim's mother to testify as to Michael's out-of-court statement to her the day before he was to meet with Kelley.

■ Kelley also claims the trial court erred in failing to admonish the jury as he suggested is required by our supreme court in *Carter, supra.* There, the trial court, *upon request,* admonished the jury that the statements offered were not offered for the truth of the matters they contained, but rather were offered to prove the victim's state of mind and show why she went to the defendant's home. However, in the case at bar, Kelley did not request an admonishment of the jury. A defendant who does not request an admonishment cannot claim lack of admonishment as an error on appeal. *Hudgins v. State* (1983), Ind., 451 N.E.2d 1087. Thus, the trial court did not err in allowing the victim's mother to testify as to the statements made by the victim or in failing to admonish the jury after such.

ISSUE II:

■ Kelley next claims that the trial court erred in admitting his two tape-recorded statements after denying his motion to suppress the statements. Specifically, he claims that his waiver of rights was not knowing, intelligent, and voluntary. The State at trial and on appeal acknowledges that it bears the burden of proving beyond a reasonable doubt that an accused knowingly and voluntarily waived his rights and voluntarily gave his statement. *Riley v. State* (1987), Ind., 506 N.E.2d 476; *Wagner v. State* (1985), Ind., 474 N.E.2d 476. Our supreme court has noted:

The admissibility of a statement is controlled by determining, from a totality of circumstances, whether or not it was made voluntarily. The same test determines whether a waiver of *Miranda Rights* has occurred. In reviewing the trial court's ruling on voluntariness, this court will consider only the evidence favorable to the ruling and any uncontradicted evidence in the defendant's favor.

*Riley,* 506 N.E.2d at 479.

Detective Sergeant Maxie testified that even though he did not question Kelley regarding the murder, he advised Kelley of his Miranda rights when he arrived at Kelley's residence at approximately 3:00 p.m. on September 24, 1987. While the police were searching the residence with Kelley's consent, Detective Maxie allowed Kelley to go inside several times to take some medication for an upset stomach. Both Marshal Lucas and Detective Henry testified at both the motion to suppress hearing and at trial that they gave Kelley food, beverage, and cigarettes after they arrived at the sheriff's department at approximately 7:00 p.m. They advised Kelley of his Miranda rights at 8:20 p.m., and did not question him regarding the murder until he signed a waiver form at 8:25 p.m. Kelley claims that on a number of occasions he had requested to speak with an attorney. However, both Detective Henry and Marshal Lucas noted that the only attorney Kelley requested to speak with was the prosecuting attorney, and only to speak with him concerning the weapons seized during the search regarding a potential parole violation.

Because this court will not reweigh the evidence, the judgment of the trial court must be affirmed if it is based upon sufficient evidence of probative value to sustain the trial court's findings. *Riley, supra.* The trial court properly admitted Kelley's tape-recorded confessions.

ISSUE III:

■ Kelley next claims that the trial court erred in excluding letters Michael had written to Kelley's daughter. The State's witness, Humphrey, testified that after reading the letters, Kelley told him that he would like to "get his hands on (Michael) ... and hurt him bad." *Record* 408–409. After the State had rested its case, and after an evening recess, Kelley announced to the court his intention to proffer the letters in Kelley's case-in-chief. The court excluded the letters because Kelley had not supplied the State with copies of the letters during discovery as required by the court's November 25, 1987 discovery order, which required Kelley to produce any "books, papers, documentary, or physical evidence the defendant intended to use at trial." Kelley claims that the trial court has failed to require of the State that which would be required of the defendant. Our court, in *Moritz v. State* (1984), Ind.App., 465 N.E.2d 748, stated the following regarding the admission of evidence which was not disclosed pursuant to a pre-trial discovery order:

> Imposition of sanctions for failure to comply with discovery orders is discretionary with the trial court, and this rule applies to a decision to permit a witness to testify. Where properly discoverable evidence is revealed for the first time at trial, the defendant may move for a continuance or for exclusion of the testimony. The evidence is excludable when the court finds that the State blatantly and deliberately refused to comply with the discovery order.

465 N.E.2d at 753 (citation omitted). It is well settled that the trial court has wide discretion in determining what constitutes substantial compliance with a discovery order. *Patel v. State* (1989), Ind., 533 N.E.2d 580; *Carter v. State* (1987), Ind., 512 N.E.2d 158. Exclusion of evidence as a sanction is proper when noncompliance with the discovery order is blatant and deliberate. *Patel, supra,* at 585; *Carter, supra,* at 171.

Kelley admits that he had the letters in his possession during discovery, but claims he did not give them to the State because he did not intend to use them at trial until after they had been referred to by Humphrey, in the State's case-in-chief. Kelley suggests that the rule announced in *Moritz* should be applicable in this instance, and the State should have been granted a continuance for purposes of examining and evaluating the letters before the trial court imposed the more severe sanction of excluding the letters.

We believe Kelley's suggestion has merit. We note, however, that Kelley failed to produce the letters for either this court or the trial court's review. In order to preserve an objection to the exclusion of documentary evidence for review, a defendant must place the documents in the record. *Thompson v. Lee* (1980), Ind.App., 402 N.E.2d 1309. Absent such, this court cannot intelligently examine an appellant's claim of error. Here, Kelley failed to place the proffered documents in the record before us. Under these circumstances, we find no error in the exclusion of the letters. *See also Booth v. State* (1976), 265 Ind. 184, 352 N.E.2d 726.

Further, we cannot determine what the letters were expected to reveal. We would note that it seems totally inconsistent with his claim of self-defense to show a possible incentive, through the letters, for killing the victim. Thus, even if the letters had been presented, which they were not as required, any error in their exclusion was harmless.

ISSUE IV:

■ Kelley claims the trial court erred in admitting State's Exhibit 32, a tape recording of a September 4, 1987, call to the Madison Police Department because it was totally irrelevant. A transcript of the recording shows that the caller implicated Michael in a robbery of the Ranch Supermarket on September 3, 1987, one day after the murder. State's witness, Richard Humphrey, identified the caller's voice as that of Kelley's. Obviously, the recording was relevant to the case in that it disclosed the defendant's state of mind immediately after the murder.

Further, Kelley argues that the State failed to lay a sufficient foundation for admission of the exhibit. However, it should be noted that he failed to object on this ground at trial. His failure to do so constitutes waiver of the issue for appellate review. *Fozzard v. State* (1988), Ind., 518 N.E.2d 789.

Notwithstanding the defendant's waiver of the issue, his claim lacks merit. The State played the recording during the testimony of Roberta May, a police dispatcher who received the call. While May did not identify the caller, the next State's witness, Humphrey, did. Subsequent testimony which establishes a proper foundation for an exhibit renders harmless any error in admission. *Burton v. State* (1986), Ind., 497 N.E.2d 535, 537–38. Thus, the trial court properly admitted State's Exhibit 32.

ISSUE V:

█ Kelley claims the trial court erred in admitting State's Exhibits 13, 14, and 15, photographs of the grave site, and State's Exhibit 18, a photograph of the victim's head. He claimed the photographs had no probative value and their sole purpose was to inflame and prejudice the jury. It is well settled that the admission of photographs is within the sound discretion of the trial court. *Fozzard, supra; Hubbard v. State* (1987), Ind., 514 N.E.2d 1263; *Christopher v. State* (1987), Ind., 511 N.E.2d 1019. Photographs which demonstrate a witnesses' testimony are generally admissible. *Id.*

The photographs of the grave site in the instant case were illustrative of Sergeant Calmer's testimony regarding his investigation of the scene of the crime, and they depicted the appearance of the grave site at the time of its discovery. Also, the photographs depict a different view of the site from various angles and thus, were not cumulative. *Stratton v. State* (1986), Ind., 499 N.E.2d 1123, 1125; *Dickerson v. State* (1986), Ind., 488 N.E.2d 346, 348–49. The mere fact that these photographs may have depicted gruesome details of the crime was not a sufficient basis for exclusion. *Fozzard*, at 793; *Raub v. State* (1987), Ind.,

517 N.E.2d 80, 82; *Whitehead v. State* (1987), Ind., 511 N.E.2d 284, 295.

Kelley has also referred to State's Exhibit 18, an autopsy photograph of the victim's head; however, he does not address the exhibit in his argument. He has therefore waived the issue. Regardless of his waiver of the issue the exhibit was admissible. Dr. Clark, the pathologist who performed the autopsy testified that the gunshot wounds to the back of the head and chest were the cause of death. *Record* at 364, 366, 375. Because the photograph depicted the gunshot wound to the back of the head, it is probative and thus admissible. *Dickson v. State* (1988), Ind., 520 N.E.2d 101, 106; *Fozzard, supra,* at 793; *Whitehead, supra,* at 259. As previously discussed, relevant evidence is not inadmissible simply because it is gruesome. The trial court properly admitted the grave site and autopsy photographs.

ISSUE VI:

█ Kelley claims the trial court erred in excluding the testimony of defense witness, Julie Clark, regarding Michael's alleged bad reputation for peace and quiet. Specifically, Kelley claims her testimony supported his claim of self-defense by showing Michael was the aggressor. In an offer to prove, Ms. Clark testified that five years prior to his death Michael shot her brother in the foot with a BB–gun, struck and threatened to kill Michelle Vaughn, and attempted to rape her several times. As a general rule, the character of a victim is not an issue in a murder trial, and evidence showing his general reputation as a violent person is inadmissible. *Norris v. State* (1986), Ind., 498 N.E.2d 1203, 1205; *Hobson v. State* (1984), Ind., 471 N.E.2d 281, 288; *French v. State* (1980), 273 Ind. 251, 257, 403 N.E.2d 821, 825. An exception to the rule exists where the issue of self-defense is presented. *Id.* However, a limitation to the exception exists where the defendant tenders evidence of the victim's violent nature to show that the victim was the aggressor. *Norris, supra,* at 1205. The defendant may make such a showing only through general reputation testimony. *Id.* As did the defendant in *Norris*, Kelley

attempted to make the showing by testimony of specific bad acts; therefore, the trial court did not err in excluding the testimony.

Furthermore, Kelley testified that he did not meet the victim until 1985 which was three years after the alleged incidences in Clark's testimony. He made no showing that he had knowledge of the specific bad acts at the time he acted; therefore, the evidence was also inadmissible to prove that Kelley had reason to fear the victim because of these incidents. *Norris, supra*, at 1205; *Hobson, supra*, at 288; *French, supra*, at 825. The trial court properly ruled that the alleged incidents were irrelevant and should be excluded.

ISSUE VII:

Finally, Kelley claims the trial court erred in refusing his Instructions No. 2 and 5. In determining whether an instruction has been properly refused, an appellate court must determine as follows:

(1) whether the tendered instructions correctly state the law;

(2) whether there is evidence in the record to support the giving of the instruction; and

(3) whether the substance of the tendered instruction is covered by other instructions which were given.

*Spears v. State* (1980), 272 Ind. 634, 401 N.E.2d 331.

Kelley acknowledges that one of the court's considerations in determining whether his Instruction No. 2 was properly refused is whether other instructions covered the substance of his instruction. *Buza v. State* (1988), Ind., 529 N.E.2d 334, 335. Although Kelley saw fit to include only his instructions in the record, the supplemental record shows that the trial court's Instructions No. 18 and 19 properly covered self-defense as was discussed in Kelley's tendered Instruction No. 2.

Kelley's tendered Instruction No. 5 read as follows:

The concealment of the implicating evidence is not evidence of guilt. It is, however, evidence of consciousness of guilt. You should consider such evidence against the defendant only in connection with other evidence, and in light of the conditions and motives which prompted the defendant's actions. You should determine what weight should be given to such evidence.

*Record* at 87. The defendant's instruction was taken from *Banks v. State* (1972), 257 Ind. 530, 276 N.E.2d 155. However, it should be noted that the court's Instruction No. 22 covered direct and circumstantial evidence and the weight to be given the same. Because the final instructions given by the trial court covered the substance of Kelley's instructions, the court did not err in refusing such. *Buza, supra.*

Accordingly, for the foregoing reasons, the judgment of the trial court is affirmed.

RATLIFF, C.J., and ROBERTSON, J., concur.