Johnny DAVIS, Appellant–Defendant,

v.

STATE of Indiana, Appellee–Plaintiff.

No. 49A05–9611–CR–467.

Court of Appeals of Indiana.

Feb. 25, 1998.

David M. Henn, Indianapolis, for appellant-defendant.

Jeffrey A. Modisett, Attorney General of Indiana, Suzann Weber Lupton, Deputy Attorney General, Indianapolis, for appellee-plaintiff.

## OPINION

BAILEY, Judge.

### Case Summary

Appellant–Defendant, Johnny Davis ("Davis"), appeals his conviction of Murder.[1] We affirm.

### Issues

Davis raises two issues on appeal which we restate as:

I. Whether the doctrines of double jeopardy and collateral estoppel bar Davis's retrial for murder of Kenneth Anderson.

II. Whether the trial court properly denied Davis's proffered jury instruction.

### Facts

The facts most favorable to the judgment indicate that on August 20, 1995, an argument arose between the Davis children and the Anderson children, whose families lived in the same neighborhood. Vallie Davis, the Defendant's wife, went out into the yard where the children were fighting and began quarrelling with Brenda Anderson, the mother, and Christine Love ("Love"), the aunt, of the Anderson children. From a few houses away, Kenneth Anderson ("Anderson"), the father of the Anderson children, saw the commotion and came to the scene carrying a .22 caliber rifle. Upon arriving at the Davis's yard, Anderson handed the rifle to Love.

At some point during the altercation between the children and adults, Davis, who had been asleep in his living room, awoke and saw approximately twenty-five people standing in or around his yard arguing.

Davis picked up his phone and dialed 911 to summon the police when he noticed Anderson dashing toward his yard with the gun. Davis threw the phone down, retrieved his own .22 caliber rifle and went outside. The next time Davis looked up, he saw Love pointing the gun at his son. Davis fired his gun at Love and hit her. He then lowered the gun and scanned the crowd for Anderson. A few seconds passed before he saw Anderson. At that time, Davis did not see anything in Anderson's hands. Davis then observed Anderson move towards the gun that lay at Love's feet and he shot Anderson. Both Love and Anderson died as a result of the gunshot wounds.

### Procedural History

Davis was charged with two counts of murder for the deaths of Love and Anderson. A jury acquitted Davis for the murder of Love but was unable to reach a verdict on the murder charge regarding Anderson and a mistrial was declared. The State subsequently retried Davis for the murder of Anderson and a jury found Davis guilty.

### Discussion and Decision

#### I. Double Jeopardy and Collateral Estoppel

##### A. Double Jeopardy

Davis asserts that his subsequent prosecution for the murder of Anderson was barred by the Double Jeopardy Clauses of the United States and Indiana Constitutions. Specifically, Davis argues that while two people were killed by his gunfire, only one criminal episode occurred. Thus, Davis asserts that the jury's acquittal on the charge of murdering Love should have precluded retrial for the murder of Anderson. We disagree.

A defendant's right to not be put twice in jeopardy for the same offense arises from the United States Constitution and the Indiana Constitution. *Newman v. State,* 677 N.E.2d 590, 592 (Ind.Ct.App.1997). Article I, section 14 of the Indiana Constitution provides that "[n]o person shall be put in jeopardy twice for the same offense." The Fifth Amendment to the Constitution of the United States provides that "nor shall any person be

---

1. Ind.Code § 35–42–1–1.

subject for the same offense to be twice put in jeopardy of life or limb." These protections stem from the underlying premise that a defendant should not be twice tried or punished for the same offense. *Schiro v. Farley*, 510 U.S. 222, 229–31, 114 S.Ct. 783, 789, 127 L.Ed.2d 47 (1994).

■ Legislative intent in enacting a statute is the key consideration when determining whether double jeopardy protects against multiple punishments for the same offense under a particular statute. *Nield v. State*, 677 N.E.2d 79, 81 (Ind.Ct.App.1997). "The whole point of whether multiple offenses of the same statute are committed during a single transaction focuses on the definition of the crime involved. Thus, the touchstone of whether the double jeopardy clause is violated is the legislature's articulated intent." *Id.* With regard to murder, the gravamen of the offense is causing the death of another person. *Id.* Thus, the offense prohibited by Ind.Code § 35–42–1–1 is violated each time a death occurs, even if more than one death occurs in the course of a single incident.

■ The record reveals that Davis admitted firing his gun at least twice and shooting and killing both Love and Anderson. Thus, he committed two offenses and was correctly charged with two counts of murder. Additionally, because the first jury was unable to reach a verdict on the charge of murder regarding Anderson, there was no double jeopardy violation in retrying Davis.

Our inquiry does not end there, however. Even though two offenses may not constitute the "same offense" for double jeopardy purposes, the State may still be collaterally estopped from prosecuting the second charge.

### B. Collateral Estoppel

■ Collateral estoppel, or in modern usage, issue preclusion, "means simply that when an ultimate issue of fact has once been determined by a valid and final judgment, that issue cannot again be litigated between the same parties in any future lawsuit." *Ashe v. Swenson*, 397 U.S. 436, 443, 90 S.Ct.

1189, 1194, 25 L.Ed.2d 469 (1970). "Collateral estoppel in criminal trials is an integral part of the protection against double jeopardy guaranteed by the Fifth and Fourteenth Amendments." *Townsend v. State*, 632 N.E.2d 727, 731 (Ind.1994). Collateral estoppel is not the same as double jeopardy, but rather it is embodied within the protection against double jeopardy. *Segovia v. State*, 666 N.E.2d 105, 107 (Ind.Ct.App.1996). "The traditional bar of jeopardy prohibits the prosecution of the crime itself, whereas collateral estoppel, in a more modest fashion, simply forbids the government from relitigating certain facts in order to establish the fact of the crime." *Id.* (internal quotation omitted). Thus, collateral estoppel "requires that when the State has received an adverse decision of a critical *issue of fact* in a trial, that adverse decision prevents later relitigation of the same issue in a later prosecution." *Townsend*, 632 N.E.2d at 731 (emphasis added).

■ During the first trial, the jury determined that Davis acted in self-defense when he shot Love. This acquittal relating to Love did not amount to an acquittal for Davis regarding the murder of Anderson. The jury was unable to make that same determination with regard to the shooting of Anderson, resulting in a hung jury. Thus, in retrying Davis for the murder of Anderson, the State did not attempt to relitigate an ultimate fact which was previously disposed of by a jury in violation of the doctrine of collateral estoppel. Instead, the jury was asked to make the legal determination of whether Davis acted in self-defense when he shot and killed Anderson. This issue was not decided during the first trial. Thus, collateral estoppel did not bar relitigation.[2]

Davis further asserts that the United States Supreme Court's holding in *Ashe*, prohibits a subsequent trial. Davis's reliance on *Ashe* is misplaced. There, the State brought Ashe to trial for the robbery of one of six men who were robbed while playing poker. At trial, Ashe conceded that all the elements of robbery had occurred, but contested his

---

**2.** In applying the doctrine of collateral estoppel, this court would normally engage in a two-step analysis where we would initially determine what the first judgment decided and then examine how that factual determination bears on the

second case. *See Segovia*, 666 N.E.2d at 107. However, Davis has not met his burden of establishing the factual predicate for the application of the doctrine. Consequently, such analysis is unnecessary.

identity as the perpetrator of the crime. The jury found Ashe not guilty. *Ashe*, 397 U.S. at 439–40, 90 S.Ct. at 1192. In a subsequent trial, Ashe was later convicted of robbing a different man at the poker game. Upon review, the Supreme Court found that the second trial constituted a double jeopardy violation because the previous jury had conclusively determined that Ashe was not the perpetrator of the crimes that occurred during the single criminal episode, thereby barring further litigation of that fact under the doctrine of collateral estoppel. In so doing, the Supreme Court stated: "[c]ollateral estoppel ... stands for an extremely important principle in our adversary system of justice. It means simply that when *an issue of ultimate fact* has once been determined by a valid and final judgment, that issue cannot again be litigated between the same parties in any future lawsuit." *Id.* at 443, 90 S.Ct. at 1194 (emphasis added). As we stated previously, the fact that Davis shot Anderson was undisputed. The ultimate *issue* to be decided in the second trial was whether Davis acted in self-defense in doing so. Thus, the holding in *Ashe* did not prohibit the State from reprosecuting Davis for the murder of Anderson.

## II. Self–Defense

Next, Davis asserts that the trial court erred in refusing to give his proffered instruction on self-defense. Specifically, Davis asserts that the instruction he tendered was a correct statement of law which was supported by the evidence, the substance of which was not covered by other instructions delivered to the jury.

 We note at the outset that the manner of instructing the jury lies within the sound discretion of the trial court. *Harvey v. State*, 652 N.E.2d 876, 877 (Ind.Ct.App. 1995), *trans. denied.* Thus,

> we will not find reversible error unless an instruction error, when considered with the rest of the instructions as a whole and in reference to each other, is such that the charge to the jury misstates the law or otherwise misleads the jury as to the law applicable to the case.

*Id.* However, a defendant is entitled to have the jury instructed correctly on an essential rule of law. *Hill v. State*, 615 N.E.2d 97, 99

(Ind.1993). A defendant is also entitled to an instruction on any defense which has some foundation in the evidence, even when that evidence is weak or inconsistent. *Strong v. State*, 591 N.E.2d 1048, 1050 (Ind.Ct.App. 1992), *trans. denied.*

The trial court's instruction to the jury on self-defense was as follows:

> The defense of self-defense is defined by law as follows:

> A person is justified in using reasonable force against another person to protect himself or a third person from what he reasonably believes to be the imminent use of unlawful force. However, a person is justified in using deadly force only if he reasonably believes that that force is necessary to prevent serious bodily injury to himself or a third person or the commission of a felony. No person in this state shall be placed in legal jeopardy of any kind whatsoever for protecting himself or his family by reasonable means necessary. A person is justified in using reasonable force, including deadly force, against another person if he reasonably believes that the force is necessary to prevent or terminate the other person's entry of attack on his dwelling or curtilage.

> The state has the burden of disproving this defense beyond a reasonable doubt.

(R. 118).

 Davis argues that the trial court's instruction did not sufficiently apprise the jury of their duty to determine whether he acted in self-defense based on how the situation appeared to him at the time the shooting occurred, under the then existing circumstances. In so doing, Davis cites *French v. State*, 273 Ind. 251, 403 N.E.2d 821 (1980). However, the instruction in the present case goes beyond those disapproved of in *French* and more closely resembles those approved of by our supreme court in *Shaw v. State*, 534 N.E.2d 745 (Ind.1989).

As can be seen from the language of the trial court's instruction set forth above, the jury was told repeatedly that the standard to be used was "reasonable belief" from Davis's perspective. Additionally, unlike the instructions given in *French*, the trial court in the present case included the additional statement that "a person is justified in using

reasonable force, *including deadly force, against another person if he reasonably believes that the force is necessary* to prevent or terminate the other person's entry or attack on his dwelling or curtilage." (R. 118) (emphasis added). Also, similar to the instructions given in *Shaw,* the jury in the present case was informed that "[n]o person in this state shall be placed in legal jeopardy of any kind whatsoever for protecting himself or his family by reasonable means necessary," and that "[t]he state has the burden of disproving this defense beyond a reasonable doubt." (R. 118–19).

Consequently, we cannot say that the jury was misled; that they were inadequately instructed; nor that Davis was prejudiced by the trial court's use of this instruction. Accordingly, the language contained in the challenged instruction, which was taken directly from Indiana's Pattern Jury Instruction 10.03, sufficiently and properly informed the jury of the standard to be applied when considering Davis's claim of self-defense.

Affirmed.

GARRARD and RUCKER, JJ., concur.