Pursuant to Ind.Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT:

**PATRICIA CARESS McMATH**
Marion County Public Defender Agency
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**ANGELA N. SANCHEZ**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| TERRY DRAKE, | ) | |
| Appellant, | ) ) ) | |
| vs. | ) ) | No. 49A02-1106-CR-516 |
| STATE OF INDIANA, | ) ) | |
| Appellee. | ) ) | |

APPEAL FROM THE MARION SUPERIOR COURT
The Honorable Patricia Gifford, Senior Judge
Cause No. 49G06-1003-MR-019286

**February 9, 2012**

**MEMORANDUM DECISION – NOT FOR PUBLICATION**

**MATHIAS, Judge**

Terry Drake ("Drake") was convicted in Marion Superior Court of murder, Class A felony attempted murder, and Class A misdemeanor carrying a handgun without a license. Drake appeals and raises two issues, which we restate as:

I. Whether the trial court abused its discretion in refusing Drake's tendered jury instruction on self-defense; and

II. Whether statements made during the State's closing argument constituted prosecutorial misconduct rising to the level of fundamental error.

We affirm.

**Facts and Procedural History**

On the evening of January 1, 2010, Walter Jones ("Jones") and Paul Moore, Jr. ("Moore") went to a gas station in Indianapolis, where they encountered Drake, who had previously sold marijuana to Jones. Jones and Moore inquired as to whether Drake could sell them some marijuana, but Drake did not have any marijuana for sale. Jones and Moore then left the gas station and purchased marijuana elsewhere. Jones and Moore then returned to Jones's apartment, where Jones called Drake and asked him to come over to help roll the marijuana and smoke it.

Drake arrived about twenty minutes later, where he proceeded to roll the marijuana into a cigar that Jones and Moore had purchased earlier that day. Drake then received a call on his cell phone, and Moore overheard Drake giving the caller directions to Jones's apartment. A few minutes later, someone started banging on the door of Jones's apartment. Drake got up and opened the door, and a man wearing a mask and holding a shotgun entered. Jones immediately grabbed the man and threw him to the

2

ground, and Drake then put a gun to the side of Jones's head and shot him, killing him almost instantly. Moore was able to escape the apartment through the back door, but he was shot multiple times as he ran away. When Moore finally collapsed on the sidewalk, Drake walked up to him and shot him in the face. After Drake ran away, neighbors came to Moore's aid and called the police. Though his injuries were severe, Moore survived.

As a result of these events, the State charged Drake with murder, Class A felony attempted murder, Class A felony robbery, and Class A misdemeanor carrying a handgun without a license. Following a two-day jury trial, at which Moore testified for the State, Drake was acquitted of the burglary charge, but convicted of the remaining charges. Drake now appeals.

## I. Jury Instruction on Self-Defense

Drake argues that the trial court abused its discretion in rejecting his tendered jury instruction on self-defense. The manner of instructing a jury is left to the sound discretion of the trial court. Rogers v. State, 897 N.E.2d 955, 962 (Ind. Ct. App. 2008), trans. denied. We will not reverse the trial court's ruling unless the instructional error is such that the charge to the jury misstates the law or otherwise misleads the jury. Id. Jury instructions must be considered as a whole and in reference to each other, and even an erroneous instruction will not constitute reversible error if the instructions, taken as a whole, do not misstate the law or otherwise mislead the jury. Id. In reviewing a trial court's decision to give or refuse a tendered instruction, we consider: (1) whether the instruction correctly states the law; (2) whether there is evidence in the record to support

3

the giving of the instruction; and (3) whether the substance of the tendered instruction is covered by other given instructions. Id.

Here, the trial court gave two instructions on self-defense. The first provided that:

It is an issue whether the Defendant acted in self-defense. A person may use reasonable force against another person to protect himself from what the Defendant reasonably believes to be the imminent use of unlawful force.

A person is justified in using deadly force, and does not have a duty to retreat, only if he reasonably believes that deadly force is necessary to prevent serious bodily injury to himself or to prevent the commission of a felony.

The State had the burden of proving beyond a reasonable doubt that the Defendant did not act in self-defense.

Appellant's App. p. 113. The second self-defense instruction provided that "[t]here is no duty on behalf of the Defendant to retreat prior to using force to protect himself or third parties." Id. at 114.

Drake tendered an additional self-defense instruction, which stated that:

With regard to the defense of self-defense, the existence of the danger, the necessity or apparent necessity of using force, as well as the amount of force required can only be determined from the standpoint of the accused at the time and under the then existing circumstances.

A person's belief of apparent danger does not require the danger to be actual, but only that the belief be in good faith.

Id. at 78. The trial court refused Drake's tendered instruction, concluding that its substance was adequately covered by the other self-defense instructions.

It is undisputed that Drake's tendered instruction was a correct statement of the law and that there was evidence in the record to support giving a self-defense instruction; at issue is whether the substance of the tendered instruction was covered by other given

4

instructions. On appeal, Drake argues that the jury instructions were inadequate because they failed to inform the jury that the existence of an apparent danger and the amount of force necessary to resist the danger was to be determined from the standpoint of the defendant, as his tendered instruction did. In support of his argument, Drake relies on French v. State, 273 Ind. 251, 403 N.E.2d 821 (1980). In French, the jury received the following two self-defense instructions:

COURT'S PRELIMINARY INSTRUCTION NO. 15
It is the law that one seeking to avail himself of the right of self defense must be himself without fault, and if the evidence shows beyond a reasonable doubt that a defendant himself provoked the attack or brought upon himself the necessity which he sets up in his own defense, or voluntarily put himself in the way of an altercation, or sought a conflict, he is thereby deprived of the right of self defense unless he in good faith made an effort to retreat or abandon the conflict in some manner.

COURT'S FINAL INSTRUCTION NO. 29
A person is justified in using reasonable force against another person to protect himself or a third person from what he reasonably believes to be the imminent use of unlawful force. However a person is justified in using deadly force only if he reasonably believes that that force is necessary to prevent serious bodily injury to himself or a third person in the commission of a forcible felony.

Id. at 255, 403 N.E.2d at 824 (internal quotations omitted). Our supreme court held that these instructions were inadequate, in part because they did not "apprize the jury that the existence of the danger, the necessity or apparent necessity, as well as the amount of force required to resist the attack can only be determined from the standpoint of the defendant, at the time and under the then existing circumstances." Id. at 256, 304 N.E.2d at 825.

5

However, our supreme court subsequently found jury instructions containing very similar language to be adequate, even though the instructions did not specifically provide that the existence of the danger and the necessity of defense can only be determined from the standpoint of the defendant. See Shaw v. State, 534 N.E.2d 745, 747 (Ind. 1989). In Shaw, the jury was instructed that

> A person is justified in using reasonable force against another person to protect herself from what she reasonably believes to be the imminent use of unlawful force. However, a person is justified in using deadly force only if she reasonably believes that the force is necessary to prevent serious bodily injury to herself or the commission of a forcible felony. No person in this state shall be placed in legal jeopardy of any kind whatsoever for protecting herself by reasonable means necessary.
> There are three (3) requirements for self defense when deadly force is used:
>     (1) The defendant must have acted without fault;
>     (2) The defendant must have had a right to be where she was; and,
>     (3) The defendant must have reasonably believed that she was in immediate danger of death or serious bodily harm.
> Once a claim of self defense is raised, the State bears the burden of disproving the existence of one of these elements beyond a reasonable doubt.

Id. The jury was instructed further that "a threat at a time when there is the present ability to assault, and under circumstances which lead a person in good faith reasonably to believe that he is about to be seriously injured or killed is sufficient on the theory of self defense." Id.

Relying on French, the defendant argued that the instructions were inadequate because they did not inform the jury that it must make its decision based on what the situation appeared to be to the defendant, rather than on what the actual facts were. Id. Our supreme court disagreed, reasoning that "the jury was repeatedly told that the

6

standard to be considered by the jury was the reasonable belief of the defendant."  Id.

The court reasoned further that "[w]e cannot see how such language could be interpreted

by a jury in any manner other than that the standard to be used was the state of mind of

the defendant at the time of the infliction of the injury."  Id.  Accordingly, the court held

that the trial court's instructions were sufficient to correctly inform the jury as to the

standard to be used in a case of self-defense.  Id.; see also Davis v. State, 691 N.E.2d

1285, 1289-90 (Ind. Ct. App. 1998) (jury instruction providing that the standard to be

used was the defendant's reasonable belief was adequate to inform the jury of its duty to

determine whether defendant acted in self-defense based on how the situation appeared to

him at the time of the shooting).

The Shaw court did not disapprove of French, but rather held that the instructions

in Shaw went "beyond those" those at issue in French.  Shaw, 534 N.E.2d at 747.

However, to the extent that French can be read to affirmatively require a jury instruction

explicitly "appriz[ing] the jury that the existence of the danger, the necessity or apparent

necessity, as well as the amount of force required to resist the attack can only be

determined from the standpoint of the defendant," 273 Ind. at 256, 403 N.E.2d at 825,

Shaw appears to have implicitly overruled that holding.  Under Shaw, the relevant

inquiry is whether the jury was sufficiently informed that the proper standard is the state

of the mind of the defendant at the time of the injury.

Here, like in Shaw, the jury was repeatedly told that the standard to be considered

by the jury was the reasonable belief of the defendant.  Specifically, the trial court's

7

instructions provided that the defendant could use reasonable force to protect himself "from *what the Defendant reasonably believes* to be the imminent use of unlawful force." Appellant's App. p. 113 (emphasis added). The instructions provided further that "a person is justified in using deadly force, and does not have a duty to retreat, *only if he reasonably believes* that deadly force is necessary to prevent serious bodily injury to himself or to prevent the commission of a felony." Id. (emphasis added). Undoubtedly, the trial court's instructions in the case at bar contained fewer references to the defendant's "reasonable belief" than those at issue in Shaw—Drake points out that the instructions in Shaw contained four such references, while the instructions at issue here contained only two—but we do not believe the issue can be resolved by simply counting such references. Like our supreme court in Shaw, we cannot see how the trial court's instructions could be interpreted by a jury in any manner other than that the standard to be used was the state of mind of the defendant at the time of the shooting. We therefore conclude that the substance of Drake's tendered jury instruction was adequately covered by other instructions given by the trial court. Accordingly, the trial court did not abuse its discretion in refusing the tendered instruction.

## II. Prosecutorial Misconduct

Drake also contends that the State engaged in prosecutorial misconduct in its closing argument by stating that Moore testified "at tremendous risk to himself and his family," thereby insinuating that Moore had been threatened with harm for testifying against Drake. Tr. p. 310. To preserve a claim of prosecutorial misconduct, the

defendant must object and request an admonishment. <u>Nunley v. State</u>, 916 N.E.2d 712, 721 (Ind. Ct. App. 2009), <u>trans. denied</u>. If the party is not satisfied with the admonishment, the proper procedure is to move for a mistrial. <u>Id.</u> Failure to request an admonishment or move for a mistrial results in waiver of the issue on appeal. <u>Id.</u> Because Drake did not object to the statement at trial, request an admonishment, or move for a mistrial, his claim of prosecutorial misconduct is waived.

In an attempt to avoid waiver, Drake asserts that the allegedly improper statement constituted fundamental error. Where a claim of prosecutorial misconduct has been properly preserved, the reviewing court must determine (1) whether the prosecutor engaged in misconduct, and if so, (2) whether the misconduct, under all of the circumstances, placed the defendant in a position of grave peril to which he should not have been subjected. <u>Coleman v. State</u>, 946 N.E.2d 1160, 1166 (Ind. 2011). But where, as here, a claim of prosecutorial misconduct has not been properly preserved, the defendant must establish not only the grounds for the misconduct, but also the additional grounds of fundamental error. <u>Id.</u> "The fundamental error exception is extremely narrow, and applies only when the error constitutes a blatant violation of basic principles, the harm or potential for harm is substantial, and the resulting error denies the defendant fundamental due process." <u>Brown v. State</u>, 929 N.E.2d 204, 207 (Ind. 2010) (quotations omitted). To be deemed fundamental, "[t]he error claimed must either make a fair trial impossible or constitute clearly blatant violations of basic and elementary principles of due process." <u>Id.</u> (quotations omitted).

On appeal, Drake takes issue with the following statement of the prosecutor regarding Moore's testimony: "He picked him out of a photo array, and he came to court. Came to court. Under oath and at tremendous risk to himself and his family, testified and told you that the defendant is the one that did this." Tr. p. 310. Drake argues that this statement was improper because it implied that Moore had been threatened with harm for testifying against Drake, and there was no evidence to support such a conclusion. Even if we accept this assertion, we cannot conclude that Drake has established prosecutorial misconduct rising to the level of fundamental error. The prosecutor's single, isolated statement that Moore testified "at tremendous risk to himself and his family," while certainly not laudable, was simply too fleeting to rise to the level of fundamental error. See Wright v. State, 690 N.E.2d 1098, 1112 (Ind. 1997) (concluding that improper statement did not place defendant in a position of grave peril, in part because the statement was fleeting in nature).

## Conclusion

The trial court did not abuse its discretion in denying Drake's tendered jury instruction on self-defense, and we cannot conclude that the State committed prosecutorial misconduct rising to the level of fundamental error.

Affirmed.

FRIEDLANDER, J., and RILEY, J., concur.

10