Edward M. HOPKINS, Appellant–
Defendant,

v.

STATE of Indiana, Appellee–Plaintiff.

No. 49A04–0008–CR–347.

Court of Appeals of Indiana.

April 30, 2001.

Transfer Denied July 18, 2001.

Victoria Ursulskis, Indianapolis, IN, Attorney for Appellant.

Karen Freeman–Wilson, Attorney General of Indiana, Christopher Lafuse, Depu-

ty Attorney General, Indianapolis, IN, Attorneys for Appellee.

## OPINION

MATTINGLY, Judge

Edward Hopkins was convicted after a jury trial of two counts of attempted murder,[1] Class A felonies, two counts of robbery,[2] Class A felonies, two counts of confinement,[3] Class B felonies, and carrying a handgun without a license,[4] a Class A misdemeanor enhanced to a Class C felony based on a prior conviction. He was sentenced to 146 years, with each count running consecutively. We expand and restate the issues Hopkins raises on appeal as:

1. Whether Hopkins was subjected to double jeopardy by his convictions of attempted murder and his convictions of robbery as Class A felonies;

2. Whether Hopkins was subjected to double jeopardy by his convictions of both robbery and confinement;

3. Whether the trial court exceeded its statutory authority by sentencing him to consecutive sentences; and

4. Whether the jury was properly instructed as to accomplice liability and the definition of attempted murder.

We affirm in part, reverse in part, and remand for resentencing.

## FACTS AND PROCEDURAL HISTORY

In the early morning hours of March 9, 1999, George Martinez and Paula McCarty were returning to Martinez's residence after an evening of bar hopping. They saw Hopkins and his brother Anthony stranded by the roadside. McCarty and Martinez stopped and gave the brothers a jumpstart. Martinez offered to "hold" anything Anthony had with him to keep it out of police hands should he continue to have car problems that evening. The car started, but shortly thereafter, Hopkins found Martinez and McCarty at a nearby Village Pantry and explained that he and his brother needed another jumpstart. At this point, Anthony accepted Martinez's previous offer to "hold" any property. They all went to Martinez's residence, where Anthony gave Martinez a handgun. Anthony and Hopkins then left.

About fifteen minutes later, Hopkins and Anthony returned to Martinez's house. Martinez and McCarty assumed the brothers had further car problems, let them in, and prepared to give them a ride home. Hopkins and Anthony asked for the gun back, and Martinez obliged. As the group approached the front door to leave, Anthony locked the front door, pointed the gun at Martinez and McCarty, and ordered them to go to the basement. Once in the basement, Anthony ordered Martinez and McCarty to strip naked and empty their pockets. Anthony handed the gun to Hopkins, and Anthony went upstairs where he took approximately two to three pounds of marijuana and $4,500.00.

Hopkins remained in the basement and shot Martinez in the neck. Anthony returned to the basement, took the gun and shot McCarty. While McCarty pretended to be dead, Hopkins and Anthony left. McCarty and Martinez worked together to use a cellular phone to call for help, as he could not speak above a whisper and her spinal cord was severed from the gunshot.

---

1. Ind.Code §§ 35–41–5–1, 35–42–1–1.

2. Ind.Code § 35–42–5–1.

3. Ind.Code § 35–42–3–3.

4. Ind.Code § 35–47–2–1.

## DISCUSSION AND DECISION

1. *Double Jeopardy as Applied to the Robbery and Attempted Murder Convictions*

Hopkins contends that his four convictions as Class A felonies, two counts of attempted murder and two counts of robbery, constitute double jeopardy. Specifically, he argues that "there is a reasonable possibility that the jury used the same evidence in finding essential elements in the attempt murder counts as it used in finding essential elements in the Class A felony robbery counts...." (Br. of Appellant at 14.) The State asserts, without explanation, that the robbery and attempted murder convictions do not violate double jeopardy and that our resolution of the double jeopardy question is "premature":

> Defendant's convictions for robbery and attempted murder do not violate double jeopardy. It is clear that Defendant cannot be sentenced for both robbery as a Class A felony and attempted murder where the same injury supports both convictions. *Richardson v. State,* 717 N.E.2d 32, 56 [ (Ind.1999) ] (Sullivan, J. concurring) (holding that conviction for two crimes enhanced by the same injury prohibited by the Indiana Constitution.) In this case, however, as discussed more fully in Section III below, the matter needs to be remanded to the trial court for resentencing. Thus, resolution of this issue is premature.

(Br. of Appellee at 7.) We find that the resolution of this issue is not premature, and hold that Hopkins' convictions of attempted murder and robbery as Class A felonies subjected Hopkins to double jeopardy.

*Richardson* holds that:

> [T]wo or more offenses are the "same offense" in violation of Article I, Section 14 of the Indiana Constitution, if, with respect to either the statutory elements of the challenged crimes or the actual evidence used to convict, the essential elements of one challenged offense also establish the essential elements of another challenged offense. Both of these considerations, the statutory elements test and the actual evidence test, are components of the double jeopardy "same offense" analysis under the Indiana Constitution.

717 N.E.2d at 49–50.

### A. *Statutory Elements Test*

▬ The *Richardson* statutory elements test requires a comparison of the essential statutory elements of one charged offense with the essential statutory elements of the other charged offense. *Id.* at 50. The relevant statutes along with the charging informations must be examined. Once the essential elements of each charged offense are identified, we must determine "whether the elements of one of the challenged offenses could, hypothetically, be established by evidence that does not also establish the essential elements of the other charged offense." *Id.*

Robbery is defined as follows:

> A person who knowingly or intentionally takes property from another person or from the presence of another person:
>
> (1) by using or threatening the use of force on any person; or
>
> (2) by putting any person in fear;
>
> commits robbery, a Class C felony. However, the offense is a Class B felony if it is committed while armed with a deadly weapon or results in bodily injury to any person other than a defendant, and a Class A felony if it results in serious bodily injury to any person other than a defendant.

Ind.Code § 35–42–5–1.

The charging informations related to Hopkins' two robbery charges state:

Count III

Edward M. Hopkins a.k.a. Carl A. Hopkins, on or about March 9, 1999, did knowingly take from the person or presence of Paula McCarty property, that is: United States currency, by putting Paula McCarty in fear or by using or threatening the use of force on Paula McCarty which resulted in serious bodily injury, that is: paralysis to the lower portion of her body, to Paula McCarty;

Count IV

Edward M. Hopkins a.k.a. Carl A. Hopkins, on or about March 9, 1999, did knowingly take from the person or presence of George W. Martinez property, that is: United States currency, by putting George W. Martinez in fear or by using or threatening the use of force on George W. Martinez which resulted in serious bodily injury, that is: extreme pain, to George W. Martinez;

(R. at 25.)

Under the statutory elements test, the State had to prove the following elements to convict Hopkins of robbery as a Class A felony: (1) the defendant (2) knowingly or intentionally (3) took property from (4) the victims (5) by using or threatening the use of force (6) resulting in serious bodily injury to someone other than the defendant.

Attempted murder is committed when a person with "the culpability required for commission of the crime . . . engages in conduct that constitutes a substantial step toward," Ind.Code § 35–41–5–1 (attempt), knowingly or intentionally killing another human being. Ind.Code § 35–42–1–1 (murder).

Hopkins was charged as follows:

Count I

Edward M. Hopkins a.k.a. Carl A. Hopkins, on or about March 9, 1999, did attempt to commit the crime of Murder, which is to knowingly kill another hu-man being, namely: Paula McCarty, by engaging in conduct, that is: knowingly shot at and against Paula McCarty, with the intent to kill Paula McCarty, which conduct constituted a substantial step toward commission of said crime of Murder;

Count II

Edward M. Hopkins a.k.a. Carl A. Hopkins, on or about March 9, 1999, did attempt to commit the crime of Murder, which is to knowingly kill another human being, namely: George W. Martinez, by engaging in conduct, that is: knowingly shot at and against George W. Martinez, with the intent to kill George W. Martinez, which conduct constituted a substantial step toward commission of said crime of Murder;

(R. at 24–25.)

■ The essential elements of attempted murder are that (1) the defendant (2) knowingly or intentionally (3) engaged in conduct that constituted a substantial step (4) toward killing another human being.

There is no question that these crimes contain different elements. Robbery requires the taking of property, while attempted murder requires conduct that constitutes a substantial step toward taking the life of another human being. Under the statutory elements test, there is no double jeopardy.

B. *Actual Evidence Test*

■ Having found no double jeopardy under the statutory elements analysis, we next analyze whether, based on an examination of the actual evidence presented at trial, each challenged offense was established by separate and distinct facts.

To show that two challenged offenses constitute the "same offense" in a claim of double jeopardy, a defendant must demonstrate a reasonable possibility

that the evidentiary facts used by the fact-finder to establish the essential elements of one offense may also have been used to establish the essential elements of a second challenged offense.

*Richardson,* 717 N.E.2d at 53.

The evidence at trial was that Anthony pointed a gun at Martinez and McCarty and told them to strip naked and empty their pockets. Anthony then handed the gun to Hopkins, who continued to point the gun at Martinez and McCarty while Anthony went upstairs to find more property to steal. While Anthony was upstairs, Hopkins shot Martinez in the neck, damaging Martinez's vocal cords. Anthony came back downstairs, took the gun and shot McCarty, severing her spinal column. Based on these facts, the elevation of the robbery charges to Class A felonies was premised on the severe bodily injuries inflicted on Martinez and McCarty. Hopkins was subjected to double jeopardy because the same severe bodily that supported the convictions of attempted murder.

In *Hampton v. State,* 719 N.E.2d 803, 808 (Ind.1999), our supreme court held that a defendant cannot be convicted of both murder and robbery as a Class A felony when "both the murder conviction and the enhanced robbery conviction are based on the same bodily injury to the [same] victim." Similarly, in the case before us there is a reasonable probability that the evidentiary facts used by the jury to establish the essential elements of robbery as a Class A felony were also used to establish the essential elements of attempted murder. This analysis discloses that the convictions of and sentencing of Hopkins to two counts of robbery as a Class A felonies and two counts of attempted murder as a Class A felonies violate the double jeopardy protection provided by the Indiana Constitution.

■ In a case like this, where two convictions contravene double jeopardy principles, a reviewing court may remedy the violation by reducing either conviction to a less serious form of the same offense if doing so will eliminate the violation. *Richardson,* 717 N.E.2d at 54. Hopkins contends that we should reduce his Class A felony convictions to Class C felony convictions. He cites, in support of his argument, *Lowrimore v. State,* 728 N.E.2d 860 (Ind.2000) and *Grace v. State,* 731 N.E.2d 442 (Ind.2000).

*Lowrimore* was convicted of murder and of robbery as a Class A felony. The jury was instructed that to convict Lowrimore of robbery, the State must have proven that he took money from the victim by putting her in fear or using or threatening the use of force on her, which resulted in serious bodily injury, that is, a broken neck. The murder instruction mentioned killing by "asphyxiation," which the evidence indicated could have resulted from Lowrimore's tying the cord around the victim's neck or from his suffocating her with a pillow. Because of the decomposition of the victim's body, the cause of death was undetermined. There was a reasonable possibility that the same evidence used by the jury to establish the essential elements of murder was also included among the evidence establishing the essential elements of robbery as a Class A felony; accordingly, our supreme court found a double jeopardy violation and remanded to the trial court to reduce the robbery conviction to a Class C felony.[5]

---

5. Presumably, the supreme court reduced the robbery conviction to a Class C felony rather than a Class B felony because of the inability to determine exactly how the robbery and death were accomplished—i.e., whether by suffocation or by asphyxiation.

In *Grace,* guns were pointed at Davies and his father, they were robbed, and Davies was shot. Grace was convicted of murder and robberies as Class A felonies. Our supreme court reduced Grace's robbery convictions from Class A to Class B felonies, finding that:

Here, as in *Hampton,* there is more than "a reasonable possibility that the evidentiary facts used by the fact-finder to establish the elements of one offense may also have been used to establish the elements of [the] second challenged offense." *Hampton,* 719 N.E.2d at 809 (quoting *Richardson,* 717 N.E.2d at 53). In fact, the charging information in the present case, which was read to the jury, alleges that Defendant (1) murdered Davies, and (2) committed three robberies, as Class A felonies, because the robberies resulted in death to Davies. Defendant's murder conviction and his enhanced robbery convictions were based on the same bodily injury to the same victim, and as such, cannot stand together.

Conclusion

We affirm Defendant's convictions and sentence except that (1) we reverse Defendant's conviction for the robbery of Eugène Davies, Jr., and (2) we reduce Defendant's two remaining robbery convictions and conspiracy to commit robbery conviction from Class A felonies to Class B felonies.

*Grace,* 731 N.E.2d at 445–446.

We agree that Hopkins' convictions of robbery as Class A felonies must be reduced. However, we disagree with Hopkins that the convictions should be reduced to Class C felonies and find instead that they should be reduced to Class B felonies. The *Grace* case is instructive in this regard. As in that case, Hopkins' robberies were conducted at the point of a gun. The gun was pointed at Martinez and McCarty when they were taken to the basement and instructed to strip and empty their pockets. At that point, Hopkins had committed robbery as a Class B felony as the robbery was committed while Hopkins was armed with a deadly weapon.

The serious bodily injury that could elevate robbery to a Class A felony and also support the murder charge came later. Accordingly, we vacate Hopkins' convictions of robbery as Class A felonies and remand to the trial court for resentencing on Hopkins' convictions of robbery as Class B felonies.

### 2. *Double Jeopardy as Applied to the Confinement and Robbery Convictions*

■ Hopkins also contends he was subjected to double jeopardy and that Ind. Code § 35–38–1–6 was violated in his convictions and sentences for robbery and confinement.

### A. *Statutory Elements Test*

The elements of confinement as a Class B felony are (1) the defendant (2) knowingly or intentionally (3) confines another person without the other person's consent, or (4) removes another person, through fraud, enticement, force or threat of force from one place to another, (5) while armed with a deadly weapon or where the confinement results in serious bodily injury to another person. Ind.Code § 35–42–3–3.

The charging informations for the confinement counts read as follows:

Count V

Edward M. Hopkins a.k.a. Carl A. Hopkins, on or about March 9, 1999, did knowingly, while armed with a deadly weapon, that is: a handgun, confine Paula McCarty, without the consent of Paula McCarty, by forcing Paula

McCarty at gunpoint from the kitchen to the basement.

Count VI

Edward M. Hopkins a.k.a. Carl A. Hopkins, on or about March 9, 1999, did knowingly, while armed with a deadly weapon, that is: a handgun, confine George W. Martinez, without the consent of George W. Martinez, by forcing George W. Martinez at gunpoint from the kitchen to the basement.

(R. at 25–26.) Thus, Hopkins' convictions of confinement as a Class B felony arise out of his use of a handgun to effectuate the removal of Martinez and McCarty, without their consent, from the kitchen to the basement.

With respect to the robbery charges, the specific conduct charged by the State was taking money from Martinez and McCarty by putting them in fear or by using or threatening the use of force that resulted in paralysis to the lower portion of McCarty's body and extreme pain for Martinez.

 Confinement is the use of force to remove a person from one location to another. Robbery is the intentional taking of property, and not the removal of a person from one place to another. The robbery was conducted in the basement and was independent of the confinement of Martinez and McCarty as they were moved from the kitchen to the basement. There is no violation of double jeopardy under the statutory elements analysis.

### B. *Actual Evidence Test*

 Confinement exists when there is a substantial interference with liberty without consent. *Harvey v. State,* 719 N.E.2d 406, 411–412 (Ind.Ct.App.1999). Any amount of force can cause a confinement because force, however brief, equals confinement. *Wethington v. State,* 560 N.E.2d 496, 508 (Ind.1990). Some confine-

ment is inherent in a robbery. Unless there is force used beyond that which is inherently necessary in any robbery, there cannot be a separate conviction of confinement. *Id.*

Hopkins argues the confinement was an integral part of the robbery and not an act separate and apart from the robbery. We disagree. McCarty and Martinez were directed at gunpoint to go from the first floor kitchen area to the basement. Paula testified that she was hit on the back of the head with a gun when she initially did not react to the demand. The confinement was initiated and executed independent of the subsequent robbery and it was properly charged and substantiated at trial as a separate occurrence.

### C. *Indiana Code § 35–38–1–6*

 Hopkins contends that his conviction of both confinement and robbery violated Ind.Code § 35–39–1–6 because the confinement was an integral part of the robbery and not an act separate and apart from the robbery. This section provides:

Whenever:

(1) a defendant is charged with an offense and an included offense in separate counts; and

(2) the defendant is found guilty of both counts; judgment and sentence may not be entered against the defendant for the included offense.

An offense may be either inherently or factually included for purposes of this statute. *Harvey v. State,* 719 N.E.2d 406, 411 (Ind.Ct.App.1999). An offense is inherently included in another offense if the lesser offense may be established "by proof of the same material elements or less than all the material elements" defining the "greater" offense charged. *Id.* An offense is factually included in another offense when the charging instrument alleges "the means used to commit the crime charged

include all of the elements of the alleged lesser included offense." *Id.*

As noted above, the robbery counts and the confinement counts were separately charged and separately substantiated by direct evidence at trial. What hinders Hopkins' claim here is location: the charging information pinpointed the period of confinement as during the victims' removal from the upstairs to the basement; the robbery was charged and substantiated as occurring when Hopkins took the victims' money in the basement. As such, the confinement charges were not inherently or factually included within the robbery counts. No relief is available under Ind. Code § 35-38-1-6.

### 3. Sentencing Authority

■■■ Hopkins contends, and the State concedes, that the consecutive sentences he received for attempted murder and criminal confinement were improper pursuant to Ind.Code § 35-50-1-2. That section provides:

> except for crimes of violence, the total of the consecutive terms of imprisonment . . . to which the defendant is sentenced for felony convictions arising out of an episode of criminal conduct shall not exceed the presumptive sentence for a felony which is one (1) class higher than the most serious of the felonies for which the person has been convicted.

The only "crimes of violence" of which Hopkins was convicted are the two counts of robbery as Class A felonies.[6] *See Ellis*

*v. State*, 736 N.E.2d 731, 737 (Ind.2000) (holding that attempted murder is not a crime of violence under this statute.)

As all of Hopkins' sentences were consecutive, we must remand to the trial court for resentencing. Only Hopkins' two convictions of robbery as Class A felonies[7] can be ordered to be served consecutively.

### 4. Jury Instructions and Fundamental Error

■■■ Hopkins argues that two jury instructions resulted in fundamental error because they misled the jury and failed to state the proper standards for attempted murder and accomplice liability according to *Spradlin v. State*, 569 N.E.2d 948 (Ind. 1991), and *Bethel v. State*, 730 N.E.2d 1242 (Ind.2000).[8]

■■■ The manner of instructing the jury lies largely within the sound discretion of the trial court. *Utley v. State*, 699 N.E.2d 723, 727 (Ind.Ct.App.1998). The purpose of an instruction is to inform the jury of the law applicable to the facts without misleading the jury and to enable it to comprehend the case clearly and arrive at a just, fair, and correct verdict. *David v. State*, 669 N.E.2d 390, 391 (Ind. 1996). This court will not find reversible error unless the instruction, when considered as a whole and in reference to other instructions, is such that the charge misleads the jury as to the law applicable to the case. *Utley*, 699 N.E.2d at 727. In considering whether the trial court erred in giving or refusing an instruction, we

---

**6.** We have determined that Hopkins' convictions of robbery as Class A felonies must be reduced to Class B felonies. This reduction does not affect the propriety of the consecutive sentences, however, as robbery as a Class B felony is also a crime of violence.

**7.** See n. 5.

**8.** Hopkins failed to object to the instructions at trial. The failure to object to allegedly erroneous instructions results in waiver, *Mitchell v. State*, 712 N.E.2d 1050, 1054 (Ind. Ct.App.1999), unless those instructions constituted fundamental error. *Taylor v. State*, 717 N.E.2d 90, 93 (Ind.1999). Although we find no fundamental error, we choose to address these issues despite the waiver.

consider the following factors: (1) whether the instruction correctly states the law; (2) whether there is evidence in the record to support the giving of the instruction; and (3) whether the substance of the instruction is covered by other instructions given. *Id.* A defendant is entitled to have the jury instructed correctly on an essential rule of law. *Davis v. State,* 691 N.E.2d 1285, 1289 (Ind.Ct.App.1998).

The first instruction of which Hopkins complains is the trial court's Final Instruction 11 on accomplice liability. That instruction provided in pertinent part:

> A person is responsible for the actions of another person when, either before or during the commission of a crime, he knowingly aids, induces, or causes the other person to commit a crime. To aid is to knowingly support, help, or assist in the commission of a crime.
>
> In order to be held responsible for the actions of another, he need only have knowledge that he is helping in the commission of a crime. He does not have to personally participate in the commission of each element of the crime.
>
> Proof of the Defendant's failure to oppose the commission of a crime, presence at the crime scene, companionship with the person committing the offense, and conduct before and after the offense may be considered in determining whether aiding may be inferred.

(R. at 112.) Final Instruction 10 instructed the jury "when two or more persons combine to commit a crime, each is criminally responsible for the acts of his confederate(s) committed in furtherance of the common design, the act of one being the act of all." (R. at 111.)

Hopkins appears to argue the jury was misled because the third paragraph of Instruction 11 failed to inform it that an accomplice must engage in some affirmative conduct in aiding or inducing the of-

fense. Hopkins relies on *Peterson v. State,* 699 N.E.2d 701, 706 (Ind.Ct.App. 1998), where we found improper the refusal of an instruction Peterson had offered to supplement the trial court's instruction on accomplice liability. The trial court's instruction was inadequate because it was "cursory" and "focused on the law that a person could be convicted as an accomplice regardless of whether the other person had been prosecuted or convicted. Thus, the trial court's instruction failed to focus on the knowledge and conduct of the defendant and wholly failed to instruct that the defendant must have engaged in some affirmative conduct in aiding or inducing the offense" *Id.* ·

The accomplice liability instructions in the case before us were not so flawed. The jury was instructed that to be an accomplice Hopkins must "knowingly support, help, or assist in the commission of a crime" and must "have knowledge that he is helping in the commission of a crime." We note that in *Cohen v. State,* 714 N.E.2d 1168, 1176 (Ind.Ct.App.1999), this court recently approved an accomplice liability instruction similar to that given to Hopkins' jury.

Hopkins next asserts the jury was not properly instructed on attempted murder. A preliminary instruction provided that:

> The crime of attempted murder is defined as follows: A person attempts to commit a murder when, acting with the conscious purpose of killing another person, he engages in conduct that constitutes a substantial step toward killing that person.

> To convict either or both of the Defendants, as charged in Count 1, the State must prove as to each Defendant each of the following elements beyond a reasonable doubt:

The Defendants, Edward M. Hopkins and Anthony Hopkins

1. acting with the conscious purpose of killing Paula McCarty

2. did shoot a deadly weapon, that is: a handgun at and against the person of Paula McCarty

3. which was conduct constituting a substantial step toward the commission of a said crime of killing Paula McCarty.

(R. at 77.) The same preliminary instruction was given regarding the count of attempted murder reciting George Martinez as the victim.

The following final instruction regarding attempted murder was given:

The crime of attempted murder is defined by statute as follows: A person attempts a murder when acting with the conscious purpose of killing another person, he engages in conduct that constitutes a substantial step toward killing that person.

To convict either or both of the Defendants, as charged in Count 1, the State must have proved each of the following elements beyond a reasonable doubt:

The Defendant, Edward M. Hopkins:

1. acting with the specific intent of killing Paula McCarty

2. did shoot a deadly weapon, that is: a handgun at and against the person of Paula McCarty

3. which was conduct constituting a substantial step toward the commission of said crime of killing Paula McCarty.

(R. at 100.)

Hopkins asserts the attempted murder instructions were error because they did not convey to the jury the proper *mens rea* and because there were "irreconcilable differences" between the two instructions. He relies on *Spradlin*, where our supreme court noted that an attempted murder instruction must include a statement of specific intent:

We hold that, by definition, there can be no "attempt" to perform an act unless there is a simultaneous "intent" to accomplish such act. Simply stated, in order to attempt to commit a crime, one must intend to commit that crime while taking a substantial step toward the commission of the crime.

569 N.E.2d at 951. Hopkins complains that the phrase "conscious purpose" inadequately described the specific intent issue for his attempted murder charge and misled the jury.

*Spradlin* requires that the intent element of an attempt crime be specifically delineated. The *Spradlin* court found an attempted murder instruction inadequate because it did not inform the jury that the State was obliged to prove the defendants, at the time they struck, stabbed, and cut the victim, intended to kill him. The Hopkins jury, by contrast, was instructed that to convict Hopkins, it must find that Hopkins, "acting with the specific intent of killing" both victims, shot them. (R. at 112.) This is a specific intent instruction. Even if the trial court improperly added the phrase "conscious purpose," the jury was properly instructed on the specific intent to kill, resulting in no fundamental error.

We find that Hopkins' convictions of robbery as Class A felonies should be reduced, pursuant to double jeopardy grounds, to Class B felonies. We remand to the trial court for reduction of those convictions, and for resentencing consistent with this opinion.

FRIEDLANDER and BAILEY, JJ., concur.